MONTY S. POARCH, Petitioner v. N.C. DEPARTMENT OF CRIME CONTROL & PUBLIC SAFETY, N.C. HIGHWAY PATROL, Respondent

No. COA11-1501

(Filed 16 October 2012)

1. **Public Officers and Employees—employment termination— North Carolina Highway Patrol—just cause**

 The trial court did not err in an employment termination case by determining that petitioner's employment with the North Carolina Highway Patrol was terminated for just cause where petitioner engaged in the alleged conduct constituting unacceptable personal conduct and where other Patrol officers had been terminated for similar misconduct.

2. **Public Officers and Employees—employment termination— arbitrary and capricious—unacceptable personal conduct—just cause**

 The trial court did not err as a matter of law in an employment termination case by failing to address and correctly decide

petitioner's claim of arbitrary and capricious personnel actions. As petitioner committed the alleged acts of misconduct, the misconduct qualified as unacceptable personal conduct, and the misconduct amounted to just cause for termination, it followed that petitioner's termination was not arbitrary or capricious.

**3. Public Officers and Employees—employment termination—findings of fact—supported by the evidence**

The trial court did not err in an employment termination case by failing to credit petitioner with undisputed facts warranting relief and by adopting erroneous findings of fact that were not supported by substantial evidence. The contested findings of fact were supported by the evidence.

**4. Public Officers and Employees—State Personnel Act—employment termination—adequate compensation**

The trial court did not err in an employment termination case by finding that respondent North Carolina Highway Patrol's actions cured a violation of the State Personnel Act and that granting petitioner back pay for the violation was adequate compensation.

**5. Public Officers and Employees—employment termination—just and equitable remedy**

The trial court did not err in an employment termination case by failing to award a just and equitable remedy as the trial court did not err in the trial itself.

Appeal by petitioner from order entered 20 April 2011 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 16 August 2012.

*The McGuinness Law Firm, by J. Michael McGuinness, for petitioner appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Tammera S. Hill, for respondent appellee.*

*Richard C. Hendrix and Richard E. Mulvaney for the North Carolina Troopers Association and the National Troopers Coalition, amicus curiae.*

McCULLOUGH, Judge.

Monty S. Poarch ("petitioner") appeals the superior court's decision to affirm his dismissal from the North Carolina Highway Patrol

POARCH v. N.C. DEP'T OF CRIME CONTROL & PUB. SAFETY

[223 N.C. App. 125 (2012)]

(the "Patrol"), a division of the North Carolina Department of Crime Control and Public Safety ("respondent"). For the following reasons, we affirm.

## I. Background

Petitioner was terminated from employment as a State Trooper in September 2003 for unacceptable personal conduct for allegedly violating the Patrol's policies prohibiting unbecoming conduct, nonconformance to laws, and neglect of duty. At the time of his dismissal, petitioner had been employed by the Patrol as a State Trooper for over 18 years, of which 16 years were spent in Alexander County.

Petitioner's termination arose as a result of a complaint filed 7 October 2002 by Ms. Donna Lynne Kirby ("Ms. Kirby"). In the complaint, Ms. Kirby alleged that petitioner unlawfully stopped her the morning of 22 September 2002 because she was ending their extramarital affair. In response to Ms. Kirby's complaint, the Patrol's Director of Internal Affairs, Captain C. E. Moody ("Capt. Moody"), initiated an internal investigation and assigned First Sergeant Ken Castelloe, now Captain Castelloe ("Capt. Castelloe"), to conduct the investigation.

Capt. Castelloe conducted interviews of Ms. Kirby and petitioner as part of the investigation. During Ms. Kirby's interview on 29 October 2002, Ms. Kirby described the alleged unlawful stop and further alleged that she and petitioner had engaged in an on-again, off-again extramarital affair spanning fifteen (15) years. Ms. Kirby alleged that during the affair she had sex with petitioner on numerous occasions while petitioner was on duty, including in every patrol vehicle petitioner was issued during their relationship and in the Alexander County Highway Patrol Office. Ms. Kirby also alleged that she traveled to various locations where petitioner was assigned to work in order to spend nights with him.

Petitioner contested the allegations in his interview on 15 November 2002. Petitioner denied unlawfully stopping Ms. Kirby on 22 September 2002 and refuted the extent of their sexual relationship. However, petitioner admitted having an on-again, off-again extramarital affair and to having sexual relations with Ms. Kirby in his patrol car, behind his patrol car, and in the Alexander County Highway Patrol office. Petitioner was never asked whether the sexual relations occurred while he was on duty, and petitioner further asserts that the sexual relationship occurred off duty. But, in each instance petitioner was in uniform.

Capt. Castelloe submitted the results of his investigation on 20 January 2003. After reviewing the investigation, Capt. Moody recommended by memorandum dated 28 July 2003 that petitioner's employment be terminated for unacceptable personal conduct. Major Munday, Director of Professional Standards, disagreed with Capt. Moody's dismissal recommendation and instead recommended that petitioner receive a ten-day suspension without pay. Major Munday's recommendation was forwarded to Colonel Holden ("Col. Holden").

Col. Holden considered a ten-day suspension without pay to be inappropriate and directed Capt. Moody to conduct a pre-dismissal conference. Petitioner was notified of the pre-dismissal conference on 4 August 2003. The pre-dismissal conference was held 11 August 2003. Following the pre-dismissal conference, petitioner submitted a letter to Col. Holden on 14 August 2003 requesting a meeting and received a reply by email the following day informing him that Col. Holden could not meet with him. However, after reviewing the transcript of the pre-dismissal conference, Col. Holden ordered a follow-up interview with petitioner to address concerns raised by the pre-dismissal conference. Capt. Castelloe conducted the follow-up interview on 3 September 2003.

On 4 September 2003, Col. Holden issued a memorandum to Major Munday instructing him to dismiss petitioner and prepared the Personnel Charge Sheets upon which petitioner was dismissed.

Petitioner appealed the decision internally. On 9 October 2003, the Employee Advisory Committee recommended the decision to terminate petitioner be reversed and that petitioner be reinstated with back pay and be given a ten-day suspension without pay. On 23 October 2003, Secretary Beatty declined the recommendation of the Employee Advisory Committee and affirmed petitioner's termination from the Patrol.

Petitioner timely filed a Petition for Contested Case Hearing with the Office of Administrative Hearings on 5 November 2003. Petitioner alleged that he was discharged without just cause, his discharge constituted disparate treatment, and false and misleading information was included in his personnel file in violation of N.C. Gen. Stat. § 126-25 (2003).

A Contested Case Hearing began 19 March 2007 and concluded 22 March 2007, Administrative Law Judge Melissa Lassiter (the "ALJ") presiding. On 17 September 2007, the ALJ issued her Decision finding

that petitioner had engaged in unacceptable personal conduct, but that respondent lacked just cause to terminate petitioner due to disparate treatment. As a result, the ALJ recommended that petitioner's termination from employment be reversed and that petitioner be reinstated and disciplined at a level less than dismissal.

The State Personnel Commission (the "SPC") considered the matter at its 13 December 2007 meeting and issued its Final Agency Decision on 7 February 2008. The SPC rejected the decision of the ALJ and affirmed petitioner's termination.

Petitioner filed a petition for review in Wake County Superior Court on 5 March 2008. On 20 April 2011, the superior court judge issued an Order adopting the findings of fact and conclusions of law of the SPC's Final Agency Decision with several additional conclusions of law. Petitioner now appeals from the superior court's Order.

## II. Analysis

On appeal, petitioner raises the following issues: Whether the trial court erred in: (1) determining there was just cause for termination of petitioner's employment; (2) failing to address and correctly decide petitioner's claim of arbitrary and capricious personnel actions; (3) failing to credit petitioner with undisputed facts and adopting erroneous findings of fact; (4) finding that a violation of the State Personnel Act (the "SPA") was subsequently cured and petitioner was only entitled to limited back pay for the violation; and (6) failing to impose a just and equitable remedy.

## Standard of Review

"When reviewing a superior court order concerning an agency decision, we examine the order for errors of law." *Warren v. Dep't of Crime Control & Pub. Safety*, ___ N.C. App. ___, ___, 726 S.E.2d 920, 922 (2012) (citing *ACT–UP Triangle v. Comm'n for Health Servs. of N.C.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997)). "The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *ACT-UP*, 345 N.C. at 706, 483 S.E.2d at 392 (internal quotation marks and citation omitted).

In reviewing a final decision in a contested case in which an administrative law judge made a decision . . . and the agency does not adopt the administrative law judge's decision, the [superior] court shall review the official record, de novo, and shall make

findings of fact and conclusions of law. In reviewing the case, the court shall not give deference to any prior decision made in the case and shall not be bound by the findings of fact or the conclusions of law contained in the agency's final decision. The court shall determine whether the petitioner is entitled to the relief sought in the petition, based upon its review of the official record.

N.C. Gen. Stat. § 150B-51(c) (2003).[1]

### Just Cause for Termination

[1] Petitioner first contends that the superior court erred in determining that his employment was terminated for just cause. We disagree.

The SPA requires that just cause exist for the termination of a career State employee[2], such as petitioner. N.C. Gen. Stat. § 126-35. Under the North Carolina Administrative Code (the "Administrative Code"), there are two bases for termination of employees for just cause under N.C. Gen. Stat. § 126-35, unsatisfactory job performance and unacceptable personal conduct. 25 NCAC 1J.0604(b). In the present case, we address unacceptable personal conduct.

Our recent decision in *Warren*, ___ N.C. App. ___, 726 S.E.2d 920, requires a three-prong inquiry to determine whether just cause exists to terminate a career state employee for unacceptable personal conduct.

The proper analytical approach is to first determine whether the employee engaged in the conduct the employer alleges. The second inquiry is whether the employee's conduct falls within one of the categories of unacceptable personal conduct provided by the Administrative Code. Unacceptable personal conduct does not necessarily establish just cause for all types of discipline. If the employee's act qualifies as a type of unacceptable conduct, the tribunal proceeds to the third inquiry: whether that misconduct amounted to just cause for the disciplinary action taken. Just cause must be determined based "upon an examination of the facts and circumstances of each individual case."

*Id.* at ___, 726 S.E.2d at 925 (quoting *N.C. Dep't of Env't and Natural Res. v. Carroll*, 358 N.C. 649, 669, 599 S.E.2d 888, 900 (2004)). We address each of these inquiries in order.

---

1. Citations to N.C. Gen. Stat. refer to the statutes in effect at the time petitioner's employment with the Patrol was terminated.

2. A career State employee includes State employees who are in a permanent position appointment and have been continuously employed by the State and subject to the SPA for the immediate 24 preceding months. N.C. Gen. Stat. § 126-1.1.

As to the first inquiry, whether petitioner engaged in the alleged conduct, the Patrol alleged that petitioner engaged in a long-term extramarital affair and that, over the years, petitioner had sexual relations with Ms. Kirby in his assigned Patrol cars and in the Alexander County Highway Patrol Office while on duty. Although petitioner denied that his relationship with Ms. Kirby was a long-term extramarital affair, petitioner admitted to having an on-again, off-again extramarital affair with Ms. Kirby and admitted to specific instances of sexual relations with Ms. Kirby, including sex in a Patrol car, sex behind a Patrol car, and sex in a Patrol office.

The only dispute as to the alleged misconduct is whether the misconduct occurred when petitioner was on duty or off duty. Petitioner strongly contends that he was never on duty when he had sexual relations with Ms. Kirby. This contention is based on the Patrol's use of radio codes to check in for duty. On the other hand, respondent has presented evidence that a Patrol officer is "considered to be on duty when wearing the uniform . . . ." N.C. Highway Patrol Policy Manual, Directive P.1. Further, Capt. Castelloe testified that he understands the Patrol's policy to be that a Patrol officer is on duty when in uniform and using Patrol facilities because the Patrol officer is representing the Patrol.

After reviewing the record, we find the distinction between on duty and off duty based on the Patrol's radio codes to be of little significance in this case where petitioner was in uniform and the use of patrol facilities is so intertwined with the acts of misconduct. Furthermore, we find respondent's argument persuasive that if any member of the public would have witnessed petitioner's misconduct, where petitioner was in uniform and using patrol facilities, they would assume that petitioner was on duty to the detriment of the Patrol's reputation. Thus, in concluding the first inquiry, petitioner engaged in the alleged acts.

In regard to the second inquiry, whether petitioner's conduct falls within one of the categories of unacceptable personal conduct provided in the Administrative Code, unacceptable personal conduct is defined to include "conduct unbecoming a state employee that is detrimental to state service[.]" 25 NCAC 1J.0614(i)(5). In this case, we agree with the unchallenged findings of the ALJ, SPC, and superior court that petitioner's conduct is clearly conduct unbecoming of a state employee that is detrimental to state service. Here, "[p]etitioner failed to conduct himself in a manner to reflect most favorably on

the Highway Patrol, and in keeping with the high standards of professional law enforcement, and was a discredit to himself and the Patrol."

The determinative third inquiry in this case is "whether [petitioner's] misconduct amounted to just cause for the disciplinary action taken." *Warren*, ___ N.C. App. at ___, 726 S.E.2d at 925. In *Warren*, this Court noted that this inquiry accommodates the Supreme Court's flexibility and fairness requirements announced in *Carroll* through a balancing of the equities. *Id.* (referencing *Carroll*, 358 N.C. at 669, 599 S.E.2d at 900 ("Just cause, like justice itself, is not susceptible of precise definition. It is a flexible concept, embodying notions of equity and fairness, that can only be determined upon an examination of the facts and circumstances of each individual case.") (internal quotation marks omitted).

Here, petitioner argues that his misconduct did not amount to just cause for termination as a result of the Patrol's selective enforcement of personnel policies and disparate treatment in discipline. We disagree.

Petitioner cites various examples of misconduct by Patrol officers for which the Patrol officers were disciplined at levels less than termination. In doing so, petitioner argues that principles of commensurate discipline must be applied in this case. After reviewing the record, we acknowledge and find it inexplicable that some Patrol officers were not terminated for similar misconduct, and in some instances more egregious, than that of petitioner. However, we will not shackle the Patrol to the worst personnel decisions that they have made.

A complete review of the record reveals that officers were terminated for misconduct similar to that of petitioner based on complaints filed around the time the complaint against petitioner was filed. We find it particularly relevant that Patrol Officer Silance was dismissed for an ongoing extramarital affair while on duty based on a complaint filed 30 August 2002, less than two months prior to the complaint filed against petitioner. Furthermore, numerous complaints were filed within the year following the complaint against petitioner that resulted in dismissal or resignation or retirement in lieu of an investigation or dismissal for sexual misconduct similar to that of petitioner. Therefore, the superior court did not err in affirming petitioner's termination for just cause where the superior court properly addressed petitioner's arguments of selective enforcement of personnel policies and disparate treatment in discipline as part of

the just cause analysis by adopting the SPC's finding that "[r]espondent failed to fire a few Troopers whose conduct was egregious enough to warrant dismissal. [But] [t]he preponderance of the evidence, demonstrates . . . that the Highway Patrol has . . . dismissed Troopers for engaging in on-duty sex."

Petitioner additionally argues that the Patrol's non-compliance with its own agency rules constitutes a lack of just cause and governmental arbitrariness such that petitioner's termination cannot stand. While petitioner is correct that the respondent must follow its own rules, *see U.S. v. Heffner*, 420 F.2d 809, 811 (4th Cir. 1969) ("An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down."), petitioner has failed to identify the rules that were not followed. Instead, petitioner, without providing evidence, makes seven general assertions that the Patrol's personnel rules were not followed.[3] Because petitioner has failed to argue which rules were not followed, we do not address the argument.

For the reasons discussed, the superior court did not err in finding that just cause existed to support petitioner's termination from the Patrol where petitioner engaged in the alleged conduct constituting unacceptable personal conduct and where other Patrol officers have been terminated for similar misconduct.

## Arbitrary and Capricious Personnel Actions

[2] Petitioner also contends that the superior court erred as a matter of law in failing to address and correctly decide his claim of arbitrary and capricious personnel actions. We disagree.

After determining that petitioner committed the alleged acts of misconduct, that the misconduct qualifies as unacceptable personal conduct, and that the misconduct amounted to just cause for termination, it follows that petitioner's termination was not arbitrary or capricious. Further, we find that the SPC's Conclusions of Law 12 and

---

3. Petitioner's claims include: (1) the pre-disciplinary conference was biased, defective and incomplete; (2) the Internal Affairs investigator, Capt. Moody, prejudged the merits of the dispute; (3) the Internal Affairs investigator refused to correct serious mistakes thus allowing corrupted documents to taint the inquiry; (4) the internal investigation was incomplete, inadequate, and untimely; (5) the agency's initial ten-day suspension was arbitrarily revoked without due process; (6) petitioner was not provided with notice of his appellate rights from termination; and (7) the Patrol's own disciplinary policy was violated by the condoned disparate treatment.

16, adopted by the superior court, specifically address petitioner's claim of arbitrary and capricious personnel actions. These conclusions state:

> 12. In this case, the preponderance of the evidence established that the punishment imposed was within the range of punishment imposed in other cases involving similar conduct. Additionally, the conduct of Petitioner, a sworn law enforcement officer, was particularly egregious such that any reasonable officer could expect to be dismissed. Accordingly, *Respondent did not act arbitrarily or capriciously* when it dismissed Petitioner.
>
> * * * *
>
> 16. While there might have been mistakes made during the internal process within the agency, *these mistakes do not amount to an arbitrariness that would undermine the agency's ultimate decision to dismiss Petitioner.*

(Emphasis added.)

## Findings of Fact

[3] Petitioner's third contention is that the superior court erred in failing to credit petitioner with undisputed facts warranting relief and by adopting erroneous findings of fact that are not supported by substantial evidence.[4] We disagree.

A review of the record reveals that the contested findings of fact, which were adopted by the superior court, are supported by the evidence. Furthermore, we find the explanations accompanying the findings of fact and modified findings of fact to be instructive.

## Violation of SPA and Back Pay

[4] Petitioner further contends that the superior court erred in finding that respondent's actions cured a violation of the SPA and that granting petitioner limited back pay from 11 August 2003 to 23 October 2003 for the violation was inadequate compensation. We disagree.

We first address respondent's argument that there was no violation of the SPA. The Administrative Code provides that the purpose of a pre-dismissal conference is "to review the recommendation for dismissal with the affected employee and to listen to and to consider any information put forth by the employee, in order to insure that a

---

4. Petitioner specifically contends that findings of fact 5, 29, 30, 32, 60, 65, 71, 73, 74, 75, 78, 79, 80, 81, 82, 83, and 87 were not supported by substantial evidence.

dismissal decision is sound and not based on misinformation or mistake." 25 NCAC 1J.0613(4)(d). In conducting the pre-dismissal conference,

> the Supervisor shall give the employee oral or written notice of the recommendation for dismissal, including specific reasons for the proposed dismissal and a summary of the information supporting that recommendation. The employee shall have an opportunity to respond to the proposed dismissal, to refute information supporting the recommended dismissal action and to offer information or arguments in support of the employee's position. *Every effort shall be made by the Supervisor or the designated management representative to assure that the employee has had a full opportunity to set forth any available information in opposition to the recommendation to dismiss prior to the end of the conference.*"

25 NCAC 1J.0613(4)(e) (emphasis added).

A review of petitioner's pre-dismissal conference transcript reveals no obvious violations of the SPA. Petitioner was notified of the pre-dismissal conference on 4 August 2003. The pre-dismissal conference was held on 11 August 2003 with Capt. Moody presiding as the designated management representative. At the pre-dismissal conference, Capt. Moody informed petitioner of the dismissal recommendation and evidence in support of dismissal and offered petitioner the opportunity to refute the evidence against him. Petitioner was not limited in presenting his case; however, during the pre-dismissal conference, Capt. Moody silently read the Bible.

As a result of Capt. Moody reading the Bible, petitioner contends that the pre-dismissal conference was biased and that he was effectively denied a meaningful opportunity to present his case. We are reluctant to agree with petitioner's argument. As was made clear to petitioner during the conference, Capt. Moody was not the decision maker in the case. Capt. Moody was only present to gather evidence presented by petitioner and to pass along the evidence to Col. Holden, who was the final decision maker. Thus, it is unclear how any bias Capt. Moody held would impact the ultimate decision.

Nevertheless, because the statute specifically provides that "[e]very effort shall be made by the Supervisor or the designated management representative to assure that the employee has had a full opportunity to set forth any available information in opposition to the recommendation to dismiss prior to the end of the conference[,]" we

agree with the superior court that the asserted bias by Capt. Moody constitutes a violation of the SPA.

Having found a violation, petitioner argues that the superior court erred in concluding that the bias in the pre-dismissal conference was cured by allowing the Employee Advisory Committee (the "EAC") to consider the matter. In support of his argument, petitioner contends that the EAC has no authority to take action and could only make a recommendation to Secretary Beatty. Further, petitioner contends the review by the EAC does not cure the bias because it is a limited review process where no transcript is prepared, no evidentiary record is developed, witnesses cannot testify, and counsel may not appear.

In comparison, the rules for the EAC are very similar to the rules governing pre-dismissal conferences. *See* 25 NCAC 1J.0613(4) (Providing that attendance at a pre-dismissal conference is limited to the employee and person conducting the conference and prohibiting the employee from calling witnesses and prohibiting attorneys from attending.) Therefore, where the purpose of the pre-dismissal conference was to allow petitioner to present his case and where petitioner was given the chance to present his case to the EAC after a pre-dismissal conference and follow-up interview, the purpose of the pre-dismissal conference was satisfied and the superior court did not err in concluding that the procedural error was cured.

Concerning the superior court's award of limited back pay, petitioner further argues that, although back pay is the traditional remedy for violations of the SPA under the Administrative Code, the superior court erred in applying the back pay formula. We disagree.

Petitioner relies on 25 NCAC 1B.0421, concerning back pay in general, in asserting his argument. This reliance is misplaced. In this case, 25 NCAC 1B.0432(c) is instructive as it specifically concerns remedies for procedural violations. This section of the Administrative Code provides:

> Failure to conduct a pre-dismissal conference shall be deemed a procedural violation. Further, the remedy for this violation shall require that the employee be granted back pay from the date of the dismissal until a date determined appropriate by the commission in light of the purpose of pre-dismissal conferences. Reinstatement shall not be a remedy for lack of a pre-dismissal conference.

25 NCAC 1B.0432(c). Where the SPC has discretion to determine back pay when there is a failure to conduct a pre-dismissal conference, we cannot find that the court lacks discretion to determine back pay when there is an error in the pre-dismissal conference that was later cured. As a result, the superior court had discretion to determine the amount of back pay to be awarded petitioner in light of the purpose of the pre-dismissal conference.

## Just and Equitable Remedy

[5] Petitioner's final contention is that the superior court erred in failing to award a just and equitable remedy. Having determined that the superior court committed no error, the superior court did not err in failing to impose a just and equitable remedy. Furthermore, where the record indicates that the inaccuracies in the reported admissions by petitioner did not influence the respondent's decision to terminate petitioner, the superior court's order that petitioner is entitled to have any inaccurate statements regarding his admissions removed from his personnel file is just and equitable.

## III.  Conclusion

For the reasons set forth above, we affirm the Order of the superior court.

Affirmed.

Judges CALABRIA and STROUD concur.