JOHN BAKER WARREN, Petitioner v. NORTH CAROLINA DEPARTMENT OF CRIME CONTROL & PUBLIC SAFETY; NORTH CAROLINA HIGHWAY PATROL, Respondent

No. COA11-884

(Filed 19 June 2012)

**Police Officers—administrative law—dismissal for unacceptable personal conduct—failure to make necessary findings of fact—analytical approach**

The trial court erred by reversing the North Carolina State Highway Patrol's decision to terminate petitioner sergeant's employment based on its failure to make findings of fact required by N.C.G.S. § 150B-51(c). The proper analytical approach to be used after making the required findings of fact is to first determine whether the employee engaged in the conduct the employer alleged, and second to determine whether the employee's conduct fell within one of the categories of unacceptable personal conduct provided by the Administrative Code.

Appeal by respondent from order entered 20 April 2011 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 25 January 2012.

*The McGuinness Law Firm, by J. Michael McGuinness, for petitioner.*

*Attorney General Roy Cooper, by Assistant Attorney General Tamara S. Zmuda, for respondent.*

*Richard C. Hendrix for Amicus Curiae North Carolina Troopers Association.*

*Richard E. Mulvaney for Amicus Curiae National Troopers Coalition.*

STEELMAN, Judge.

The trial court's order is vacated and remanded for entry of findings of fact and conclusions of law reconciling conflicts in the order. In order to discharge, suspend, or demote a career state employee for disciplinary reasons based on unacceptable personal conduct, the specific misconduct must constitute just cause for the specific disciplinary sanction imposed.

## I. Factual and Procedural Background

On 7 October 2007, the North Carolina State Highway Patrol (the "Patrol"), a division of the North Carolina Department of Crime Control and Public Safety ("respondent"), dismissed Sergeant John Baker Warren ("petitioner"). The dismissal was based on the Patrol's determination that petitioner had engaged in unacceptable personal conduct in an alcohol-related incident.

Shortly after midnight on 9 September 2007, petitioner stowed an open bottle of vodka in the trunk of his Patrol-issued vehicle and drove to a party. He could have used his personal vehicle, but he elected not to because he was concerned that he would wake his aunt (with whom he was residing at the time) in an effort to get the keys to his personal vehicle. After petitioner arrived at the party, deputies of the Nash County Sheriff's Office were called because of an altercation between two women. The deputies arrested petitioner, who had consumed a significant amount of alcohol at some point that evening, because they believed he was already impaired before driving to the party.

After an investigation by Internal Affairs, the Patrol dismissed Petitioner for violating the Patrol's written policies on "conformance to laws" and "unbecoming conduct." Petitioner filed a contested case petition challenging his termination. The administrative law judge ("ALJ") found that the Patrol failed to prove just cause for termination but acknowledged that some discipline was appropriate. The State Personnel Commission ("SPC") adopted the ALJ's findings of fact but rejected the ALJ's conclusion of law that termination was inappropriate. Petitioner appealed to Wake County Superior Court.

The trial court reversed the SPC, concluding Petitioner's conduct did not justify termination. The trial court concluded that petitioner violated the Patrol's written conduct unbecoming policy by operating a state-owned vehicle after consuming "some quantity of alcohol." The trial court also concluded that petitioner did not violate the Patrol's written conformance to laws policy because there was insuf-

ficient evidence to establish that he was appreciably impaired at the time he operated a motor vehicle upon the highways of this state. The court held as a matter of law that petitioner's conduct did not justify dismissal. The case was remanded to the SPC for imposition of discipline "consistent with the lesser misconduct proven."

Respondent appeals.

## II.  Termination

In its only argument on appeal, respondent contends that the trial court erred in reversing the Patrol's decision to terminate petitioner's employment. We agree that the trial court did not make adequate findings of fact and conclusions of law.

## A.  Standard of Review

When reviewing a superior court order concerning an agency decision, we examine the order for errors of law. ACT-UP *Triangle v. Comm'n for Health Servs. of N.C.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). "The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Id.* (quoting *Amanini v. N. C. Dep't of Human Res.*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118–19 (1994)) (internal quotation mark omitted). When an administrative agency rejects an ALJ's decision in a contested case and a party appeals to the superior court, the superior court is required to review the record *de novo* and make findings of fact and conclusions of law. N.C. Gen. Stat. § 150B-51(c) (2007).[1] In making its findings of fact and conclusions of law, the superior court "shall not" accord any deference to any prior decision made in the case. *Id.* Whether conduct constitutes just cause for the disciplinary action taken is a question of law we review *de novo. N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 666, 599 S.E.2d 888, 898 (2004).

---

[1]. Citations to the North Carolina General Statutes refer to the statutes in effect at the time of the event giving rise to this case. The General Assembly made extensive changes to N.C. Gen. Stat. § 150B-51 effective 1 January 2012. *See* Act to Increase Regulatory Efficiency in Order to Balance Job Creation and Environmental Protection, ch. 398, sec. 27, 2011 6 N.C. Adv. Legis. Serv. 17, 18 (LexisNexis). These amendments are not applicable to the instant case.

## B. Analysis

### 1. Findings of Fact Required

In its order of remand, the trial court did not make findings of fact as required by statute. *See* N.C. Gen. Stat. § 150B-51(c). Instead, the court stated that the "facts are not disputed and are before the Court as found by Judge Overby." The court based its decision on the factual determination that "the evidence and fact findings are sufficient to show that [p]etitioner had consumed some quantity of alcohol before or during the driving in question." However, the ALJ concluded that the Patrol failed to establish petitioner drove the Patrol vehicle with *any* alcohol in his system. This determination by the ALJ was categorized as a conclusion of law but was clearly a factual determination. Therefore, we treat it as such. *See Peters v. Pennington,* —— N.C. App. ——, ——, 707 S.E.2d 724, 735 (2011) (reviewing an incorrectly labeled "conclusion of law" as a finding of fact). Thus, there is a conflict between the ALJ's findings of fact and the trial court's findings of fact, which state that petitioner consumed some amount of alcohol prior to driving. We vacate the trial court's order and remand this case so that the trial court can make findings of fact resolving this issue.

### 2. The Just Cause Framework

We address the parties' arguments on the subject of commensurate discipline because these issues will arise on remand. Career state employees, like petitioner, may not be discharged, suspended, or demoted for disciplinary reasons without "just cause." N.C. Gen. Stat. § 126-35(a). This requires the reviewing tribunal to examine two things: (1) " 'whether the employee engaged in the conduct the employer alleges' " and (2) "'whether that conduct constitutes just cause for the disciplinary action taken.' " *Carroll,* 358 N.C. at 665, 599 S.E.2d at 898 (quoting *Sanders v. Parker Drilling Co.,* 911 F.2d 191, 194 (9th Cir. 1990)). There are two categories of just cause for discipline: "'unsatisfactory job performance and "'unacceptable personal conduct.' " *Id.* at 666, 599 S.E.2d at 899 (quoting N.C. Gen. Stat. § 126-35 (b) (2003)). This case involves only unacceptable personal conduct. The North Carolina Administrative Code defines unacceptable personal conduct as, among other things, "the willful violation of known or written work rules." 25 N.C.A.C. 1J.0614(i)(4) (2006).[2]

---

2. This regulation was modified effective 1 January 2011, but this modification is not applicable to this case.

Respondent contends that that all forms of unacceptable personal conduct under 25 N.C.A.C. 1J.0614(i) amount to just cause for any disciplinary action authorized by N.C. Gen. Stat. § 126-35, which includes dismissal. Petitioner contends that in making a determination of just cause, the reviewing tribunal must examine the nature of the misconduct and the type of discipline imposed. In other words, the facts of a given case might amount to just cause for discipline but not dismissal. The parties have not cited, and our research has not discovered, any binding precedent that explicitly addresses this issue.

Petitioner contends that this Court adopted a "rational nexus" approach for off-duty misconduct. However, that test applies to off-duty *criminal* conduct:

> [W]here an employee has engaged in off-duty criminal conduct, the agency need not show actual harm to its interests to demonstrate just cause for an employee's dismissal. However, it is well established that administrative agencies may not engage in arbitrary and capricious conduct. Accordingly, we hold that in cases in which an employee has been dismissed based upon an act of off-duty criminal conduct, the agency must demonstrate that the dismissal is supported by the existence of a *rational nexus* between the type of criminal conduct committed and the potential adverse impact on the employee's future ability to perform for the agency.

*Eury v. N.C. Emp't Sec. Comm'n,* 115 N.C. App. 590, 611, 446 S.E.2d 383, 395–96 (1994) (citations omitted).[3] Our research has not discovered any binding precedent applying the rational-nexus test to non-criminal conduct. The rationale for applying this test is that some off-duty criminal violations may have little bearing on the employee's job. We decline to extend this test to non-criminal conduct based on *Eury.*

Our Supreme Court's opinion in *Carroll* suggests that a commensurate discipline approach is appropriate, but it is not entirely clear at which step of the analysis this should be applied. In *Carroll,* the petitioner was demoted for willfully violating written workplace guidelines. 358 N.C. at 656, 599 S.E.2d at 893. The petitioner, a

---

3. This proposition applies to all forms of state employee discipline, not just dismissal. *Kelly v. N.C. Dep't of Natural Res.,* 192 N.C. App. 129, 139, 664 S.E.2d 625, 632 (2008) ("Although this Court in *Eury* discussed the issue of just cause specifically in the context of 'dismissal,' we note that the logic requiring a rational nexus applies equally in any case of state employee discipline.").

Department of Environmental and Natural Resources ("DENR") park ranger, exceeded posted speed limits while activating the blue lights on his patrol vehicle for a personal emergency. *Id.* The petitioner was demoted, and his salary was reduced. *Id.* The SPC reversed DENR's decision to discipline the petitioner. *Id.* at 652, 599 S.E.2d at 890. The trial court reversed, and this Court affirmed. *Id.* The Supreme Court reversed. *Id.* at 676, 599 S.E.2d at 905.

The Supreme Court first addressed DENR's argument that discipline was justified because the petitioner violated state law. Under the Administrative Code, unacceptable personal conduct includes "job-related conduct which constitutes a violation of state or federal law." 25 N.C.A.C. 1J.0614(i)(2). But "[e]ven assuming [the petitioner] lacked legal justification or excuse for exceeding the . . . speed limit," the Court explained, this "conduct did not warrant demotion under the 'just cause' standard." *Carroll*, 358 N.C. at 669, 599 S.E.2d at 900. The Court then described the just cause standard:

> We acknowledge that SPC regulations define "just cause" to include "unacceptable personal conduct" and "unacceptable personal conduct" to include "job-related conduct which constitutes a violation of state or federal law." Nonetheless, the fundamental question in a case brought under N.C.G.S. § 126-35 is whether the disciplinary action taken was "just." Inevitably, this inquiry requires an irreducible act of judgment that cannot always be satisfied by the mechanical application of rules and regulations.
>
> "Just cause," like justice itself, is not susceptible of precise definition. It is a " 'flexible concept, embodying notions of equity and fairness,' " that can only be determined upon an examination of the facts and circumstances of each individual case. Thus, not *every* violation of law gives rise to "just cause" for employee discipline.

*Id.* at 669, 599 S.E.2d at 900–01 (citations omitted). This passage instructs us to consider the specific discipline imposed as well as the facts and circumstances of each case to determine whether the discipline imposed was "just."[4] Based on this language, and the authorities relied upon by the Supreme Court,[5] we hold that a commensurate dis-

---

4. The Court concluded that the agency lacked just cause to demote the petitioner for exceeding the speed limit. *Id.* at 670, 599 S.E.2d at 901. In reaching this result, the Court examined the petitioner's exemplary employment record as well as the circumstances under which the petitioner exceeded the posted speed limit. *Id.*

5. Among other secondary sources, the Supreme Court cited as persuasive Professors Roger Abrams' and Dennis Nolans' work on just cause. *See id.* at 669, 599

cipline approach applies in North Carolina. Note that the quoted text indicates that this inquiry is appropriate *despite* the fact that the regulations define just cause as unacceptable personal conduct.

However, later in the opinion, the Supreme Court stated, "Although there is no bright line test to determine whether an employee's conduct establishes 'unacceptable personal conduct' *and thus 'just cause' for discipline,* we draw guidance from those prior cases where just cause has been found." *Id.* at 675, 599 S.E.2d at 904 (emphasis added). This quotation is difficult to reconcile with the Court's discussion on the flexibility of the just cause standard because it suggests that all unacceptable personal conduct is just cause for all forms of discipline. If unacceptable personal conduct amounts to just cause, and just cause must be "determined upon an examination of the facts and circumstances of each individual case" by reference to "notions of equity and fairness," *id.* at 669, 599 S.E.2d at 900 (internal quotation mark omitted), it should follow that all categories of unacceptable personal conduct must be determined according to this standard. But not every category provided by the Administrative Code permits this type of flexibility. In *Carroll,* the Supreme Court was presented with the provision stating that "job-related conduct which constitutes a violation of state or federal law" amounts to unacceptable personal conduct. *See id.* at 669, 599 S.E.2d at 900 (internal quotation marks omitted). To account for the lack of flexibility in the language of the regulation, and accommodate the flexible just cause standard, the Court stated that "not every violation of law gives rise to 'just cause' for employee discipline." *Id.* at 670, 599 S.E.2d at 901. In other words, not every instance of unacceptable personal·conduct as defined by the Administrative Code provides just cause for discipline.

We conclude that the best way to accommodate the Supreme Court's flexibility and fairness requirements for just cause is to balance the equities after the unacceptable personal conduct analysis. This avoids contorting the language of the Administrative Code defining

S.E.2d at 900 (citing Roger I. Abrams & Dennis R. Nolan, *Toward a Theory of "Just Cause" in Employee Discipline Cases,* 1985 Duke L.J. 594, 599 (1985)). In this article, Professors Abrams and Nolan advance a commensurate approach to discipline:

> The nature and severity of the employee's offense, among other things, will determine what form of discipline is appropriate. A small departure from 'satisfactory' work may result in a verbal or written warning. A more serious or repeated offense may produce a suspension without pay. In an extreme case, the employer may be justified in discharging an employee.

Abrams & Nolan, *supra,* at 601–02 (footnotes omitted).

unacceptable personal conduct.[6] The proper analytical approach is to first determine whether the employee engaged in the conduct the employer alleges. The second inquiry is whether the employee's conduct falls within one of the categories of unacceptable personal conduct provided by the Administrative Code. Unacceptable personal conduct does not necessarily establish just cause for all types of discipline. If the employee's act qualifies as a type of unacceptable conduct, the tribunal proceeds to the third inquiry: whether that misconduct amounted to just cause for the disciplinary action taken. Just cause must be determined based "upon an examination of the facts and circumstances of each individual case." *Id.* at 669, 599 S.E.2d at 900.

### III. Conclusion

We vacate the trial court's decision and remand for the trial court to make findings of fact as directed above. These findings should then be analyzed in accordance with the analytical framework set forth above. The trial court may, in its discretion, hold additional hearings in this matter.

VACATED and REMANDED.

Judges GEER and HUNTER, JR., Robert N. concur.

---

6. For example, unacceptable personal conduct includes "absence from work after all authorized leave credits and benefits have been exhausted." 25 N.C.A.C. 1J.0614(i)(7). This language provides no leeway to account for the nature of the absence from work or the discipline imposed. It cannot accommodate the just cause standard adopted in *Carroll.*