STEPHENS, Judge.
Factual and Procedural Background
This appeal concerns the propriety of disciplinary action taken by Petitioner for Judicial Review (Respondent below) North Carolina Department of Public Safety ("DPS") against its employee, Respondent for Judicial Review (Petitioner below) Carrie J. Tucker. In 2005, after serving as a Staff Psychologist II at the Craven County Correctional Institution ("Craven") for two years, Tucker was promoted to the position of Psychological Services Coordinator. In the coordinator position, Tucker assumed responsibility for supervising other employees in Craven's mental health unit, while continuing to perform clinical work with inmates. As required by DPS, Tucker completed training sessions on DPS's Unlawful Workplace Harassment and Professional Conduct Policy ("the policy") in December 2006, May 2008, January 2009, and October 2009. The policy provided, inter alia,that, if employees fail to abide by "acceptable personal conduct standards[,] the Department may take action, including disciplinary action, evenif the conduct at issue does not rise to the level of illegaldiscrimination or harassment under state and federal law." (Emphasis in original).
On 31 May 2011, the Department issued Tucker a written warning for unacceptable personal conduct following incidents of "inappropriate comments, name calling, jokes, and profanity in the workplace." The warning resulted from an internal investigation following a complaint from one of Tucker's subordinates. During the internal investigation, Tucker admitted to using profanity and to participating in name calling and jokes in the workplace. The written warning advised Tucker that further incidents of unacceptable personal conduct "could result in additional disciplinary action up to and including dismissal." Tucker received additional training on the policy in June 2011.
In September 2011, two employees supervised by Tucker, Misty Hardison and Bonnie Bright Carter,[1] submitted written complaints about Tucker's workplace behavior. Hardison stated that Tucker referred to her own immediate supervisor, Stephen Jacobs, as a "fat ass" and made other derogatory comments about Jacobs's weight in front of Tucker's subordinates. She also claimed that Tucker called another Craven employee a "fucking idiot" in front of Hardison and a co-worker. Carter made similar claims in her statement. Danny Safrit, Director of the Eastern Region Office for the Division of Prisons, assigned Wayne Harris and Belinda Dudley to conduct an investigation of the complaints.
In her interview with Harris and Dudley, Tucker admitted to using a single profane word at work, but denied that it was directed at or about any co-worker. However, interviews with other subordinates of Tucker revealed that Tucker was continuing to use mild profanity at work, albeit at a reduced level following the May 2011 written warning. The investigation also revealed significant tensions between Tucker and Carter and between Tucker and Hardison which other employees observed had led to rude and disrespectful behavior by Hardison and Carter toward Tucker. Tucker sought help from her own supervisors in handling the situation and expressed concerns that Carter and Hardison might lodge unfounded complaints against Tucker because they knew she was "on probation" following the May 2011 written warning. During the investigation, Harris and Dudley also learned that Tucker was sometimes signing leave forms for her subordinates using celebrity names in place of her own, a habit which Tucker admitted to undertaking in an effort to add humor to the work environment.
After reviewing the results of the investigation and consulting with the Superintendent of Craven, DPS determined that demotion was the appropriate level of discipline, in light of Tucker's recent written warning for, inter alia,using profanity in the workplace. On 16 March 2012, Tucker was demoted from her position as Psychological Services Coordinator at Craven to Staff Psychologist II at Greene Correctional Institution ("Greene"). On 16 July 2012, Tucker filed a petition for a contested case hearing in the Office of Administrative Hearings. A hearing was held on 10 and 15 May 2013 before then Administrative Law Judge ("ALJ") Beecher R. Gray. On 8 January 2014, the ALJ entered a final decision determining that DPS was without just cause to demote and transfer Tucker, ordering her reinstatement, and granting other relief including back pay, mileage reimbursement, and attorney's fees. The ALJ found that Tucker occasionally used mild profanity at work and had signed celebrity names to requested leave forms, but determined that these actions did not constitute the type of unacceptable personal conduct required to support Tucker's demotion.
On 17 February 2014, DPS filed a petition in Beaufort County Superior Court for judicial review of the ALJ's final decision, raising two issues: (1) whether DPS had just cause to demote Tucker for unacceptable personal conduct, and (2) whether the ALJ had the legal authority to order that lost on-call pay and mileage reimbursement be awarded to Tucker. Following a hearing on 21 July 2014, the superior court entered an order affirming the ALJ's final decision with two modifications: that the award of back pay to Tucker would not include on-call pay and DPS was not required to pay Tucker mileage reimbursement for any period following the entry of the order. On 30 September 2014, DPS gave notice of appeal from the superior court's order, and, on 2 October 2014, Tucker gave notice of cross-appeal from the order. On 22 December 2014, DPS filed in our Supreme Court a petition for discretionary review and a motion to consolidate the appeal in this matter with those in two other cases in which the State was seeking discretionary review or appealing to the Supreme Court. On 5 March 2015, the Supreme Court denied DPS's petition for discretionary review and dismissed as moot the associated motion to consolidate.
DPS's Appeal
DPS argues that the superior court erred as a matter of law when it affirmed the ALJ's decision reversing Tucker's demotion. Specifically, DPS contends that, although the superior court properly adopted the ALJ's findings of fact that Tucker engaged in some of the conduct alleged as the basis for her demotion, the court erred in adopting the ALJ's conclusions of law that Tucker's conduct did not fall within the category of unacceptable personal conduct and thus did not provide just cause for her demotion. We disagree.
"Whether conduct constitutes just cause for the disciplinary action taken [by an agency] is a question of law we review de novo ." Warren v. N.C. Dep't of Crime Control & Pub. Safety,221 N.C.App. 376, 378, 726 S.E.2d 920, 923 (citation omitted), disc. review denied,366 N.C. 408, 735 S.E.2d 175 (2012).
Career state employees ... may not be discharged, suspended, or demoted for disciplinary reasons without just cause. This requires the reviewing tribunal to examine two things: (1) whether the employee engaged in the conduct the employer alleges and (2) whether that conduct constitutes just cause for the disciplinary action taken. There are two categories of just cause for discipline: unsatisfactory job performance and unacceptable personal conduct.
Id.at 379, 726 S.E.2d at 923 (citations and internal quotation marks omitted). The North Carolina Administrative Code ("the Code") defines unacceptable personal conduct as, inter alia, "the willful violation of known or written work rules; ... [and] ... falsification of a state application or in other employment documentation." 25 N.C.A.C. 1J.0614(8) (2013). As DPS notes, this Court has held that "[o]ne act of [unacceptable personal conduct] presents just cause for any discipline, up to and including dismissal." Hilliard v. N.C. Dep't of Corr.,173 N.C.App. 594, 597, 620 S.E.2d 14, 17 (2005) (citations and internal quotation marks omitted).
However, our Supreme Court has emphasized that
[j]ust cause, like justice itself, is not susceptible of precise definition. It is a flexible concept, embodying notions of equity and fairness, that can only be determined upon an examination of the facts and circumstances of each individual case. Thus, not everyviolation of law gives rise to just cause for employee discipline.
N.C. Dep't of Env't & Nat'l Res. v. Carroll,358 N.C. 649, 669, 599 S.E.2d 888, 900-01 (2004) (citations and internal quotation marks omitted; emphasis added). Recently, in Warren, this Court carefully reviewed the reasoning in Carrolland concluded that "the best way to accommodate the Supreme Court's flexibility and fairness requirements for just cause is to balance the equities after the unacceptable personal conduct analysis." 221 N.C.App. at 382, 726 S.E.2d at 925. Thus,
[t]he proper analytical approach is to first determine whether the employee engaged in the conduct the employer alleges. The second inquiry is whether the employee's conduct falls within one of the categories of unacceptable personal conduct provided by the Administrative Code. Unacceptable personal conduct does not necessarily establish just cause for all types of discipline. If the employee's act qualifies as a type of unacceptable conduct, the tribunal proceeds to the third inquiry: whether that misconduct amounted to just cause for the disciplinary action taken. Just cause must be determined based upon an examination of the facts and circumstances of each individual case.
Id.at 383, 726 S.E.2d at 925 (citation and internal quotation marks omitted).
Here, in its letter advising her of the demotion, DPS informed Tucker that its disciplinary action was based on the following incidents: (1) her signing celebrity names on two of Carter's requested leave forms, (2) calling one co-worker a "fucking idiot," and (3) referring to Jacobs as "Jaba"[2] [sic] in a derogatory manner. The superior court adopted the ALJ's findings of fact 13 and 29, that Tucker used "mild profanities ... in the workplace" including "damn" and "hell" after receiving the written warning, but also found their use
was conversational, was not vulgar, was never directed towards any other employee or inmate, and did not actually offend or harass any employee or inmate, nor did such usage create a hostile work environment. Other employees of [DPS] used various profanities in the same workplace, including [Tucker]'s supervisors, but none were disciplined in any way for doing so.
The ALJ specifically found that Tucker did not call or refer to anyone as a "fucking idiot" or "Jaba."
Regarding the use of celebrity names to sign the requested leave forms, the ALJ found that Tucker had "used celebrity names [such as Kelly Clarkson and Angelina Jolie] in jest" when signing request for leave forms for subordinates on several occasions. However, the ALJ also found as fact that the employees who submitted the forms to Tucker were present when she signed the celebrity names and knew that Tucker had actually signed them. Further, the forms were not filed with or submitted to any agency, but rather were kept by the requesting employee as documentation of the approval of leave. Thus, the ALJ found as fact that signing the celebrity names did not constitute falsification of an official state document and "that there existed no prohibition of making jokes or jests in the workplace. What was prohibited was inappropriate, off [-]color, or harassing jokes or jests."
DPS does not challenge any of the findings of fact made by the ALJ and adopted by the superior court as unsupported by competent evidence. Rather, DPS contends that the findings of fact cannot support the conclusion of law that Tucker's conduct did not amount to just cause for her demotion. DPS cites the written warning Tucker received in May 2011 which stated that she could be disciplined for "inappropriate comments, name[-]calling, jokes[,] and profanity in the workplace" and contends that this warning should be interpreted as meaning that "profanity and jokes in the workplace were considered 'inappropriate' " by DPS. We conclude that the word "inappropriate" in the written warning modifies each of the nouns following it, such that the conduct prohibited by the warning is inappropriatecomments, inappropriatename calling, inappropriatejokes, and inappropriateprofanity in the workplace.
On judicial review, the superior court determined that all of the ALJ's findings of fact were supported by competent evidence, and DPS has not challenged any of those factual findings on appeal. The ALJ found that DPS had alleged Tucker's behavior was unacceptable personal conduct as defined in subsections (8)(a) ("conduct for which no reasonable person should expect to receive prior warning"), (8)(d) ("the willful violation of known or written work rules"), (8)(e) ("conduct unbecoming a state employee that is detrimental to state service"), or (8)(h) ("falsification of a state application or in other employment documentation"). See25 N.C.A.C. 1J.0614. The ALJ found as fact that Tucker's use of mild profanity on occasion was "conversational" and similar to the profanity used by Tucker's supervisors, that her use of celebrity names to sign requested leave forms was "in jest" and not a "falsification," and that neither behavior was hostile or harassing. These findings of fact fully support the ALJ's conclusion of law that Tucker did not engage in any behavior that meets the definitions of unacceptable personal conduct as alleged by DPS.
In turn, the conclusion that Tucker's behavior did not constitute unacceptable personal conduct supports, indeed requires, the further conclusion of law that DPS lacked just cause to demote Tucker. See Warren,221 N.C.App. at 379, 726 S.E.2d at 923. Under the relevant case law and statute, the determination that DPS lacked just cause to take anydisciplinary action against Tucker ended the ALJ's inquiry into this contested case. There was no need to reach the third inquiry under Warren,to wit, whether the particular disciplinary action taken was appropriate in light of the employee's specific misconduct. Id.at 383, 726 S.E.2d at 925. Thus, the ALJ's conclusion of law 5-"Were the [ALJ] to find that such conduct did amount to unacceptable personal conduct, the [ALJ] would nonetheless conclude that such conduct, as demonstrated by the evidence in this case, did not give [DPS] just cause to demote [Tucker]"-was merely dicta and of no legal consequence. Accordingly, we need not address DPS's argument regarding error in conclusion of law 5. DPS's arguments are overruled.
Tucker's Cross-Appeal
Tucker argues that the superior court erred in concluding that the ALJ lacked statutory authority to include her lost on-call pay as part of the award of back pay. We disagree.
Both Tucker and DPS frame their appellate arguments in the cross-appeal as turning on a question of statutory construction, to wit, whether on-call pay was considered "salary" as defined in the statute then in effect and applicable to Tucker's contested case, which explicitly gave an ALJ the authority to require "payment of any loss of salary" to an employee resulting from an agency's wrongful disciplinary action. N.C. Gen.Stat. § 126-37 (2011).[3] Neither party cites any statute or case law that explicitly defines "salary" as referred to in section 126-37. DPS contends that salary under section 126-37 is the same as "back pay,"[4] citing a portion of the Code then in effect and applicable to the Office of State Human Resources at the time of Tucker's contested case hearing which defined "back pay" as including, inter alia,"shift premium pay"[5] but excluding "discretionary pay" such as "merit increments[ ]." 25 N.C.A.C. 01B.0421 (2011).[6] DPS asserts that on-call pay is a form of discretionary pay because DPS has the discretionto assign employees like Tucker to on-call duty. Tucker, in contrast, urges this Court to conclude that on-call pay is akin to shift premium pay and thus is part of back pay. After a careful and thorough review of the record on appeal, including the transcript of the hearing and the evidentiary exhibits, we conclude that the propriety of the ALJ's award of on-call pay is not an issue of first impression regarding statutory interpretation, but rather a straightforward matter of Tucker failing to present any evidence to support her case on this issue before the ALJ.
"This Court's review of a superior court order entered upon review of an administrative agency decision involves a two-fold task: (1) to determine whether the [superior] court exercised the appropriate scope of review and, if appropriate; (2) to decide whether the [superior] court did so properly." N.C. Dep't of Revenue v. Bill Davis Racing,201 N.C.App. 35, 40, 684 S.E.2d 914, 918 (2009) (citation, internal quotation marks, brackets, and ellipsis omitted). "[I]n cases appealed from administrative tribunals, questions of law receive de novoreview, whereas fact-intensive issues such as sufficiency of the evidence to support [an agency's] decision are reviewed under the whole-record test." Carroll,358 N.C. at 659, 599 S.E.2d at 894 (citation and internal quotation marks omitted). In its petition for judicial review, DPS argued, inter alia,that "the findings ... in this matter are ... unsupported by substantial evidence ... in view of the entire record...."
We observe that the superior court's order notes the proper standard of review as applied to each portion of the ALJ's decision. We also conclude that the superior court reached the correct result regarding the ALJ's award of on-call pay because the record on appeal is entirely devoid of evidence regarding the nature of on-call duty and pay at DPS in general and specifically Tucker's receipt of on-call pay. We can find no reference in the hearing transcript or exhibits that discuss on-call pay, and the parties cite no evidence on the topic. Simply put, Tucker failed to present any evidence in support of her request for on-call pay as part of the lost salary to which she was entitled. SeeN.C. Gen.Stat. § 150B-29(a) (2013) ("The party with the burden of proof in a contested case must establish the facts required by [section] 150B-23(a) by a preponderance of the evidence.").[7] As a result, the ALJ lacked the authority to make such an award. SeeN.C. Gen.Stat. § 150B-34(a) (2013) ("In each contested case the administrative law judge shall make a final decision or order that contains findings of fact and conclusions of law. The administrative law judge shall decide the case based upon the preponderance of the evidence...."). Accordingly, the superior court's order is
AFFIRMED.
Judges STEELMAN and McCULLOUGH concur.
Report per Rule 30(e).
Opinion
Appeal by Petitioner for Judicial Review and cross-appeal by Respondent for Judicial Review from order entered 2 September 2014 by Judge Wayland J. Sermons, Jr., in Beaufort County Superior Court. Heard in the Court of Appeals 8 April 2015.

Bright, after submitting her complaint under that surname, married and took the last name "Carter." The final decision of the ALJ refers to her as Carter, and, for clarity, we do so as well.

According to Tucker's testimony, this name was a reference to "Jabba the Hutt," a character from the Star Wars films described by film critic Roger Ebert as looking like "a cross between a toad and the Cheshire Cat[.]" See http://www.rogerebert.com/reviews/return-of-the-jedi-1983 (last visited 24 April 2015). Tucker explained that someone else had come up with the name for Jacobs and that she believed it was a reference to Jacobs's size.

Sections 126-36 through 126-41 were repealed by Session Laws 2013-382, s. 6.1, effective 21 August 2013 and applicable to grievances filed on or after that date.

Tucker first argues that no authority indicates that salary under section 126-37 is the same as back pay under the Code, but, as noted infra, alternatively contends that on-call pay falls under the definition of back pay.

Under the Code, shift premium pay is "additional compensation for employees who are regularly scheduled to work on either the second or third shift, or on a weekend shift when determined necessary to be competitive with the labor market." 25 N.C.A.C. 01D.1401 (2013).

Pursuant to N.C. Gen.Stat. § 150B-21.3A (2013), this rule expired 1 November 2014.

This statute was subject to a minor amendment effective 16 July 2012. See 2012 N.C. Sess. Laws 187, s. 7.1. However, that amendment did not alter the language quoted herein.