IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-341

 Filed: 7 March 2017

Office of Administrative Hearings, No. 15 OSP 05500

STEVEN HARRIS, Petitioner,

 v.

NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, Respondent.

 Appeal by respondent from final decision entered 25 January 2016 by

Administrative Law Judge Donald W. Overby in the Office of Administrative

Hearings. Heard in the Court of Appeals 3 October 2016.

 Law Offices of Michael C. Byrne, by Michael C. Byrne, for petitioner.

 Attorney General Roy Cooper, by Assistant Attorney General Tamika L.
 Henderson, for respondent.

 TYSON, Judge.

 The North Carolina Department of Public Safety (“Respondent”) appeals from

a final decision of the North Carolina Office of Administrative Hearings, which

concluded as a matter of law that Respondent lacked just cause to terminate Steven

Harris (“Petitioner”) from his position as a correctional officer, and ordering his

reinstatement. We affirm the decision of the administrative law judge.

 I. Background
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

 Petitioner began working in February 2013 as a correctional officer at Maury

Correctional Institution (“Maury Correctional”), a state prison operated by

Respondent. Petitioner attended Respondent’s basic training program and continued

to be trained annually regarding Respondent’s policies and procedures, including its

Use of Force policy. Petitioner’s personnel record contained no disciplinary action

prior to the incident at issue.

 Petitioner was working the night shift at Maury Correctional on 5 February

2015. He was working in the “Gray Unit,” which housed the prison’s segregation cell

block. Inmate Christopher Walls (“Walls”) was housed on the Gray Unit. Walls

placed his feces into a plastic bag and placed the bag into the toilet, which caused

water to leak onto the floor. Walls then poured the feces onto the floor. In response

to Walls’ actions, Sergeant Vernell Grantham ordered Ronnie Johnson (“Officer

Johnson”), Devon Alexander (“Officer Alexander”), and Dominique Sherman (“Officer

Sherman”) (together “the officers”) to remove Walls from his cell to allow a janitor to

clean up the feces and extinguish the stench.

 The officers restrained Walls with handcuffs behind his back, a waist chain,

and leg cuffs. Petitioner was not tasked with transporting Walls from his cell to

another location. Officers Johnson, Alexander, and Sherman testified Petitioner

approached Walls, stated to him: “You think this is funny” and punched Walls in the

stomach. Walls was physically restrained, compliant, and under the other officers’

 -2-
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

control at the time Petitioner punched Walls. The officers each testified that Walls

did not attempt to spit on Petitioner and was not offering any resistance at the time

Petitioner punched him. While the Gray Unit is equipped with several security

cameras, the incident was not captured, because it occurred in a blind spot inside the

facility. Officer Johnson became upset and informed Petitioner that he was going to

report him for punching the inmate.

 Walls, the inmate, stated to Sergeant Grantham, “Y’all hit like bitches.” Less

than thirty minutes after the incident occurred, Walls was taken to and screened by

medical personnel, who observed no bruising or redness on his abdomen. At no point

in time did Walls complain that Petitioner had struck him or abused him in any way.

 After the incident was reported, Respondent conducted an internal

investigation, concluded Petitioner had violated Respondent’s Use of Force policy,

and recommended corrective action. Petitioner received a written notice, dated 14

April 2015, of a pre-disciplinary conference with Administrator Dennis Daniels and

Administrative Services Manager Gary Parks, to be held the following day. The

written notice stated the conference was to discuss a recommendation for Respondent

to terminate Petitioner from his position for “unacceptable personal conduct.”

Petitioner was provided with the reasons his termination was recommended and was

given an opportunity to respond to the allegations.

 -3-
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

 Following the conference, Respondent’s management approved the

recommendation to terminate Petitioner’s employment. Petitioner was notified by

letter dated 17 April 2015 that his employment was terminated for unacceptable

personal conduct. Petitioner filed an appeal with the Employee Advisory Committee,

which recommended Petitioner’s dismissal be upheld. Respondent notified Petitioner

by letter dated 29 June 2015 of its final agency decision upholding Petitioner’s

dismissal.

 Petitioner filed a petition for a contested case hearing with the Office of

Administrative Hearings (“OAH”). The case was heard before an Administrative Law

Judge (“the ALJ”) on 23 October 2015. Following that hearing, the ALJ issued a final

decision on 25 January 2016. The final decision contained twenty-seven findings of

fact. Utilizing the framework established by our Supreme Court in N.C. Dep’t of Env’t

& Natural Res. v. Carroll, 358 N.C. 649, 599 S.E.2d 888 (2004) and by this Court in

Warren v. N.C. Dep’t of Crime Control, 221 N.C. App 376, 726 S.E.2d 920, disc. review

denied, 366 N.C. 408, 735 S.E.2d 175 (2012), the ALJ concluded as a matter of law

that “[t]o the extent . . . Petitioner’s conduct [punching Walls in his stomach]

constituted unacceptable personal conduct, it does not rise to the level of conduct that

would justify the severest sanction of dismissal under the totality of facts and

circumstances of this contested case” and that “[i]t is not ‘just’ to terminate

Petitioner[.]”

 -4-
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

 The ALJ reversed Respondent’s decision to terminate Petitioner’s employment,

ordered Petitioner to be retroactively reinstated to his position of employment, and

ordered a deduction from Petitioner’s pay, equivalent to a one-week suspension.

Respondent appeals.

 II. Jurisdiction

 Pursuant to N.C. Gen. Stat. § 7A-29(a) (2015), an appeal as of right lies directly

to this Court from a final decision of the Office of Administrative Hearings under G.S.

126-34.02. Respondent’s appeal is properly before us.

 III. Issues

 Respondent argues: (1) the ALJ erred as a matter of law by concluding

Respondent failed to establish just cause to dismiss Petitioner for unacceptable

personal conduct; (2) the ALJ erred as a matter of law by substituting his own

judgment for that of Respondent and imposing new discipline upon Petitioner; (3)

certain findings of fact and conclusion of law of the ALJ are not supported by

substantial evidence, are unsupported by the findings of fact, or are affected by an

error of law; and, (4) the ALJ erred as a matter of law by excluding evidence that was

not specifically mentioned in Respondent’s dismissal letter to Petitioner.

 IV. Just Cause for Dismissal

 Respondent argues the ALJ erred by concluding Respondent failed to establish

just cause for Petitioner’s dismissal. We disagree.

 -5-
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

 A. Statutory Scheme and Standard of Review for Determining Just Cause

 In 2013, our General Assembly significantly amended and streamlined the

procedure governing state employee grievances and contested case hearings,

applicable to cases commencing on or after 21 August 2013. See generally 2013 N.C.

Sess. Laws ch. 382. Our Supreme Court explained the previous statutory framework

in detail in Carroll, 358 N.C. at 657-58, 599 S.E.2d at 893-94.

 A career state employee who alleged he was dismissed, demoted, or suspended

without pay without just cause under N.C. Gen. Stat. § 126-35 was first required to

“pursue any grievance procedures established by the employing agency or

department.” Id. at 657, 599 S.E.2d at 893 (citations omitted). Once those internal

grievance procedures were exhausted, the aggrieved employee could demand a

formal, quasi-judicial evidentiary hearing before an ALJ by filing a contested case

petition with the Office of Administrative Hearings. Id. The ALJ issued a

“recommended decision,” and each party was entitled to pursue an administrative

appeal by filing exceptions and written arguments with the State Personnel

Commission (“SPC”). Id. at 657, 599 S.E.2d at 893-94.

 The SPC issued its final agency decision based on its “review of the parties’

arguments and the materials preserved in the official record[.]” Id. at 658, 599 S.E.2d

at 894. The SPC was authorized “to reinstate a wrongfully terminated employee and

to order a salary adjustment or other suitable action to correct an improper

 -6-
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

disciplinary action.” Id. (citation omitted). The SPC’s decision was subject to judicial

review upon the petition of either the employee or the employing agency in the

superior court. Id. (citation omitted). The superior court’s decision was subject to

further review in the appellate division. Id. (citation omitted).

 As part of the 2013 amendments, the General Assembly enacted N.C. Gen.

Stat. §§ 126-34.01 and 126-34.02 into the North Carolina Human Resources Act.

Under N.C. Gen. Stat. § 126-34.01 (2015), a State employee “having a grievance

arising out of or due to the employee’s employment” must first discuss the matter

with the employee’s supervisor, and then follow a grievance procedure approved by

the North Carolina Human Resources Commission. The agency will issue a final

decision, approved by the Office of State Human Resources. Id. While a final agency

decision under the previous statutory framework included formal findings of fact and

conclusions of law, a final agency decision under the current framework simply “set[s]

forth the specific acts or omissions that are the basis of the employee’s dismissal.” 25

NCAC 01J .0613(4)(h) (2016).

 Once a final agency decision is issued, a potential, current, or former State

employee may appeal an adverse employment action as a contested case pursuant to

the method provided in N.C. Gen. Stat. § 126-34.02 (2015). As relevant to the present

case, N.C. Gen. Stat. § 126-34.02(a) provides:

 (a) [A] former State employee may file a contested case in
 the Office of Administrative Hearings under Article 3 of

 -7-
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

 Chapter 150B of the General Statutes. . . . In deciding
 cases under this section, the [ALJ] may grant the
 following relief:

 (1) Reinstate any employee to the position from
 which the employee has been removed.

 (2) Order the employment, promotion, transfer,
 or salary adjustment of any individual to
 whom it has been wrongfully denied.

 (3) Direct other suitable action to correct the
 abuse which may include the requirement of
 payment for any loss of salary which has
 resulted from the improper action of the
 appointing authority.

 One of the issues, which may be heard as a contested case under this statute,

is whether just cause existed for dismissal, demotion, or suspension. As here, “[a]

career State employee may allege that he or she was dismissed, demoted, or

suspended for disciplinary reasons without just cause.” N.C. Gen. Stat. § 126-

34.02(b)(3). In such cases, “the burden of showing that a career State employee was

discharged, demoted, or suspended for just cause rests with the employer.” N.C. Gen.

Stat. § 126-34.02(d). In a contested case, an “aggrieved party” is entitled to judicial

review of a final decision of an administrative law judge [ALJ] by appeal directly to

this Court. N.C. Gen. Stat. § 126-34.02(a); N.C. Gen. Stat. § 7A-29(a).

 While Chapter 126 is silent on the issue, Chapter 150B, the Administrative

Procedure Act, specifically governs the scope and standard of this Court’s review of

an administrative agency’s final decision. See Overcash v. N.C. Dep’t of Env’t &

 -8-
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

Natural Res., 179 N.C. App. 697, 702, 635 S.E.2d 442, 446 (2006), disc. review denied,

361 N.C. 220 (2007). Article 4 of Chapter 150B is entitled “Judicial Review,” and

includes N.C. Gen. Stat. § 150B-43:

 [a]ny . . . person aggrieved by the final decision in a
 contested case, and who has exhausted all administrative
 remedies made available to the . . . person aggrieved by
 statute or agency rule, is entitled to judicial review of the
 decision under this Article, unless adequate procedure for
 judicial review is provided by another statute.

N.C. Gen. Stat. § 150B-43 (2015) (emphasis supplied).

 Chapter 150B also includes Section 51, which is entitled “Scope and standard

of review.” N.C. Gen. Stat. § 150B-51 (2015). The statute provides:

 The court reviewing a final decision may affirm the
 decision or remand the case for further proceedings. It may
 also reverse or modify the decision if the substantial rights
 of the petitioners may have been prejudiced because the
 findings, inferences, conclusions, or decisions are:

 (1) In violation of constitutional provisions;

 (2) In excess of the statutory authority or jurisdiction of the
 agency or administrative law judge;

 (3) Made upon unlawful procedure;

 (4) Affected by other error of law;

 (5) Unsupported by substantial evidence admissible under
 G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire
 record as submitted; or

 (6) Arbitrary, capricious, or an abuse of discretion.

 -9-
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

Id.

 The standard of review is dictated by the substantive nature of each

assignment of error. N.C. Gen. Stat. § 150B-51(c); Carroll, 358 N.C. at 658, 599 S.E.2d

at 894. “It is well settled that in cases appealed from administrative tribunals,

questions of law receive de novo review, whereas fact-intensive issues such as

sufficiency of the evidence to support an agency’s decision are reviewed under the

whole-record test.” Carroll, 358 N.C. at 659, 599 S.E.2d at 894-95 (brackets, quotation

marks and citation omitted). The court engages in de novo review when the error

asserted is within § 150B-51(b)(1), (2), (3), or (4). N.C. Gen. Stat. § 150B-51(c). “Under

the de novo standard of review, the trial court considers the matter anew and freely

substitutes its own judgment for the agency’s.” Overcash, 179 N.C. App. at 703, 635

S.E.2d at 446 (brackets, quotation marks, and citation omitted).

 On the other hand, when the error asserted is within N.C. Gen. Stat. § 150B-

51(b)(5) & (6), the reviewing court applies the “whole record standard of review.” N.C.

Gen. Stat. §150B-51(c). Under the whole record test,

 [The court] may not substitute its judgment for the
 agency’s as between two conflicting views, even though it
 could reasonably have reached a different result had it
 reviewed the matter de novo. Rather, a court must
 examine all the record evidence—that which detracts from
 the agency’s findings and conclusions as well as that which
 tends to support them—to determine whether there is
 substantial evidence to justify the agency’s decision.
 Substantial evidence is relevant evidence a reasonable
 mind might accept as adequate to support a conclusion.

 - 10 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

Carroll, 358 N.C. at 660, 599 S.E.2d at 895 (internal citations and quotation marks

omitted).

 We undertake this review with a high degree of deference
 because it is well established that

 “[i]n an administrative proceeding, it is the prerogative and
 duty of [the ALJ], once all the evidence has been presented
 and considered, to determine the weight and sufficiency of
 the evidence and the credibility of the witnesses, to draw
 inferences from the facts, and to appraise conflicting and
 circumstantial evidence. The credibility of witnesses and
 the probative value of particular testimony are for the
 [ALJ] to determine, and [the ALJ] may accept or reject in
 whole or part the testimony of any witness.”

N.C. Dep’t of Pub. Safety v. Ledford, __ N.C. App. __, __, 786 S.E.2d 50, 64 (2015)

(quoting City of Rockingham v. N.C. Dep’t of Env’t. & Natural Res., 224 N.C. App.

228, 239, 736 S.E.2d 764, 771 (2012)), review allowed, __ N.C. __, 792 S.E.2d 152

(2016).

 “[O]ur Supreme Court has made [it] clear that even under our de novo

standard, a court reviewing a question of law in a contested case is without authority

to make new findings of fact.” Id. at __, 786 S.E.2d 50, 63-64 (2015) (citing Carroll,

358 N.C. at 662, 599 S.E.2d at 896).

 In a contested case under the APA, as in a legal proceeding
 initiated in District or Superior Court, there is but one fact-
 finding hearing of record when witness demeanor may be
 directly observed. Thus, the ALJ who conducts a contested
 case hearing possesses those institutional advantages that

 - 11 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

 make it appropriate for a reviewing court to defer to his or
 her findings of fact.

Carroll, 358 N.C. at 662, 599 S.E.2d at 896 (internal citations and quotations marks

omitted).

 Our separately writing colleague asserts the provisions of Chapter 150B are

inapplicable because of N.C. Gen. Stat. § 150B-43, which states a person is entitled

to judicial review of the final decision under Chapter 150B “unless adequate

procedure for judicial review is provided by another statute, in which case the review

shall be under such other statute.” N.C. Gen. Stat. § 150B-43 (2015). The separate

opinion asserts N.C. Gen. Stat. § 126-34.02 is “another statute,” which provides “an

adequate procedure for judicial review.” We disagree.

 The provisions of Chapters 126 and 150B are not inconsistent. N.C. Gen. Stat.

§ 126-34.02 simply provides the employee’s procedure to file a contested case, the

issues the employee may bring before the ALJ, the types of relief the ALJ may impose,

and the right to appeal directly to this Court from the ALJ’s final decision. The scope

and standard of review of this Court’s review of the ALJ’s final decision is expressly

set forth in § 150B-51. Chapter 126 is silent on this issue. While Chapter 126 governs

the proceeding before the ALJ and provides the aggrieved party the right to appeal

to this Court, Chapter 150B sets forth our standard of review, which is the same

standard of review that has been consistently applied by our appellate courts and is

not contested by our separately writing colleague.

 - 12 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

 We perceive no intent, through the 2013 changes to this procedural framework,

to alter the applicable standard of review. Consistent with the Administrative

Procedure Act, the ALJ makes “a final decision or order that contains findings of fact

and conclusions of law” in each contested case. N.C. Gen. Stat. § 150B-34(a).

Respondent argues the ALJ must give deference to the agency in determining

whether just cause exists for the agency’s action.

 Respondent’s assertion is directly contrary to the express statutory burden

established by the General Assembly for contested case hearings of this nature.

Given that the statute explicitly places the burden of proof on the agency to show just

cause exists for the discharge, demotion, or suspension of a career State employee, it

is illogical for an ALJ to accord deference to an agency’s legal conclusion and to the

particular consequences or sanction imposed. See N.C. Gen. Stat. § 126-34.02(d)

 An appellate court’s standard of review of an agency’s final decision—and now,

an administrative law judge’s final decision—has been, and remains, whole record on

the findings of fact and de novo on the conclusions of law. See Carroll, 358 N.C. at

666-67, 599 S.E.2d at 898 (noting that whether just cause existed is a question of law

which is reviewed de novo on appeal); Blackburn v. N.C. Dept. of Pub. Safety, ___ N.C.

App. __, __, 784 S.E.2d 509, 518, disc. review denied, 786 S.E.2d 915 (2016) (“‘Where

the petitioner alleges that the agency decision was based on error of law, the

reviewing court must examine the record de novo, as though the issue had not yet

 - 13 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

been considered by the agency.’” (quoting Souther v. New River Area Mental Health,

142 N.C. App. 1, 4, 541 S.E.2d 750, 752, aff’d per curiam, 354 N.C. 209, 552 S.E.2d

162 (2001)).

 An ALJ, reviewing an agency’s decision to discipline a career State employee

within the context of a contested case hearing, owes no deference to the agency’s

conclusion of law that either just cause existed or the proper consequences of the

agency’s action. This Court came to the same conclusion in a recent unpublished

opinion. See Clark v. N.C. Dep’t of Pub. Safety, __ N.C. App. __, __, 791 S.E.2d 661, __

(Sept. 6, 2016) (unpublished) (rejecting Respondent’s argument that “the ALJ

[improperly] substituted his own judgment for that of” the agency in holding that

“whether just cause exists is a conclusion of law, which the ALJ had authority to

review de novo.” (citing Carroll, 358 N.C. at 666, 599 S.E.2d at 898)).

 After receiving and considering the evidence, and entering findings of fact, an

ALJ is free to substitute their judgment for that of the agency regarding the legal

conclusion of whether just cause existed for the agency’s action. Based upon the

evidence presented and the findings of fact supporting the legal conclusion of just

cause, the ALJ may order any remedy within the range provided in N.C. Gen. Stat. §

126-34.02, without regard to the initial agency’s determination.

 B. Whether Petitioner’s Conduct Warranted Termination

 - 14 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

 Respondent contends the ALJ erred in concluding Respondent’s dismissal of

Petitioner for unacceptable personal conduct was not supported by just cause. A

career state employee subject to the North Carolina Human Resources Act may only

be “discharged, suspended, or demoted for disciplinary reasons” upon a showing of

“just cause.” N.C. Gen. Stat. § 126-35(a) (2015). Under the North Carolina

Administrative Code, “just cause” for the dismissal, suspension, or demotion of a

career state employee may be established only on a showing of “unsatisfactory job

performance, including grossly inefficient job performance,” or “unacceptable

personal conduct.” 25 NCAC 1J .0604 (2016).

 “Just cause, like justice itself, is not susceptible of precise definition.” Carroll,

358 N.C. at 669, 599 S.E.2d at 900 (citations and quotation marks omitted). The term

“just cause” has been interpreted by our Supreme Court as a “flexible concept,

embodying notions of equity and fairness, that can only be determined upon an

examination of the facts and circumstances of each individual case.” Id. (citation and

quotation marks omitted). “Inevitably, this inquiry requires an irreducible act of

judgment that cannot always be satisfied by the mechanical application of rules and

regulations.” Id.

 In Warren v. N.C. Dep’t of Crime Control, 221 N.C. App. 376, 726 S.E.2d 920,

this Court delineated a three-part inquiry to guide judges in determining whether

just cause existed for an employee’s dismissal for unacceptable personal conduct:

 - 15 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

 We conclude that the best way to accommodate the
 Supreme Court’s flexibility and fairness requirements for
 just cause is to balance the equities after the unacceptable
 personal conduct analysis. This avoids contorting the
 language of the Administrative Code defining
 unacceptable personal conduct. The proper analytical
 approach is to first determine whether the employee
 engaged in the conduct the employer alleges. The second
 inquiry is whether the employee’s conduct falls within one
 of the categories of unacceptable personal conduct provided
 by the Administrative Code. Unacceptable personal
 conduct does not necessarily establish just cause for all
 types of discipline. If the employee’s act qualifies as a type
 of unacceptable conduct, the tribunal proceeds to the third
 inquiry: whether that misconduct amounted to just cause
 for the disciplinary action taken.

Warren, 221 N.C. App. at 382-83, 726 S.E.2d at 925 (emphasis supplied) (citations

and footnote omitted). The first two prongs of Warren are easily satisfied. The ALJ

found and concluded as follows:

 12. Here, the preponderance of the evidence shows that
 Petitioner engaged in the conduct alleged by Respondent.
 While there is some evidence to the contrary, the greater
 weight of evidence demonstrates that Petitioner struck a
 restrained inmate in the abdomen.

 . . . .

 18. Hitting inmate Walls while in restraints does not fit
 any of the categories identified for use of force. The only
 reason that makes any sense at all for the force used in this
 case is as some form of retribution for having defecated in
 his cell or to make a point that such behavior is not to be
 tolerated. Such behavior by Petitioner is prohibited.
 Hitting Walls was not “justified.”

 19. Thus, hitting a restrained inmate as found herein
 violates Respondent’s Use of Force Policy and constitutes

 - 16 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

 unacceptable personal conduct as Petitioner’s conduct
 violates a written work rule.

 As to the first prong, the unchallenged findings of fact tend to show Petitioner

punched Walls in the stomach, without provocation, and at a time when Walls was

restrained and under the control of multiple officers.

 As to the second prong, Petitioner’s conduct amounts to the “willful violation

of known or written work rules,” which is one of the listed instances of unacceptable

conduct pursuant to 25 NCAC 1J .0614(8)(d) (2016). Petitioner had been trained and

was aware of Respondent’s Use of Force policy, which limited the use of force to

“instances of justifiable self-defense, protection of others, protection of state property,

prevention of escapes, and to maintain or regain control, and then only as a last

resort” and noted that “[i]n no event is physical force justifiable as punishment.”

 We agree with the ALJ’s finding of fact that punching Walls, while he was in

restraints and under the control of other officers, “does not fit into any of the

categories identified for use of force,” and that force was used by Petitioner as “some

form of retribution” for Walls’ actions. We also agree with Respondent and the ALJ

that the record evidence and the ALJ’s conclusions support the determination that

Petitioner’s conduct constituted “unacceptable personal conduct” and warranted

discipline for his actions. 25 NCAC 1J .0604.

 Having found the first two Warren prongs satisfied, we proceed to a

consideration of whether “[Petitioner’s] misconduct amounted to just cause for the

 - 17 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

disciplinary action taken.” Warren, 221 N.C. App. at 382-83, 726 S.E.2d at 925

(emphasis supplied). The ALJ found:

 28. In this contested case, there are considerable
 mitigating factors to consider. They are as follows:

 a. This Tribunal has found as fact and concluded as a
 matter of law there is sufficient probative evidence that
 Petitioner punched Walls in the stomach as alleged by
 Respondent in the dismissal letter. While Sgt. Grantham
 lacks credibility, the other correctional officers are credible.
 However, there are aspects of the facts that remain
 troubling and serve to mitigate in favor of Petitioner.

 b. The Petitioner has a good work history with Respondent
 generally and with inmate Walls in particular. There is no
 evidence of any prior instances of unacceptable personal
 conduct, disciplinary action, or anything in Petitioner’s
 past suggesting he would engage in an act of excessive force
 against an inmate. His regular shift sergeant described
 him as a hard worker and an asset to his unit.

 c. Petitioner had a good working relationship with Walls,
 an inmate who has more than 100 adjudicated disciplinary
 infractions. Petitioner testified without contradiction that
 he was the staff member on his regular shift who could
 calm Walls down because Walls thought Petitioner was a
 fellow Muslim. There was no indication that Petitioner had
 a prior specific problem with Walls or any substantially
 negative prior interaction with Walls.

 d. This action took place when Petitioner was not working
 his regular shift. He was working with a supervisor
 (Grantham) and other correctional officers (Johnson,
 Sherman, and Alexander) with whom he had not worked
 before. It does not seem logical for Petitioner to punch an
 inmate without provocation while working with strangers.

 - 18 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

e. The medical evidence—or lack thereof—also militates in
Petitioner’s behalf. Petitioner is a very large man and
inmate Walls is a small man. The Use of Force Medical
screening conducted within half an hour of the alleged
assault found (Petitioner’s Exhibit 3E) no evidence
whatsoever of Walls having been punched by anyone.
There was no sign of any injury at all; not even redness.

f. Among inmate Walls’s many disciplinary issues, there
were multiple complaints by Walls that he was assaulted
by staff, all of which were unsubstantiated. On this
occasion, Walls never claimed to anyone that he was
assaulted by Petitioner. He did not file a grievance against
Petitioner or write any statement against Petitioner as he
had against other officers in the past.

g. Walls also had a documented history of making fictitious
or exaggerated medical complaints. On this occasion, less
than 30 minutes after allegedly being punched by
Petitioner, Walls made no complaints of pain or injury
whatever and was in “no active distress,” with “no
complaints,” even though he was being attended to in the
medical clinic at the facility with every opportunity to
complain. It strains credulity to conclude that an inmate
with this kind of history would make no complaint
whatever after receiving an unprovoked assault from a
staff member.

h. The statement “Y’all hit like bitches” attributed to Walls
was plural, made no reference to Petitioner, and was
spoken to Sergeant Grantham.

i. Video taken moments after the supposed unprovoked
assault shows Walls walking erect, smiling, and in no
apparent distress. Petitioner and officers Sherman and
Alexander appear to be engaged in friendly conversation
and are smiling and at times laughing. Johnson is in front
escorting the inmate, and is not engaged in the
conversation, but the video fails to show him remonstrating
with Petitioner or trying to keep Petitioner away from the

 - 19 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

 inmate. Everything about the video shows a completely
 uneventful situation. Likewise, the video taken directly
 before the incident shows nothing unusual.

 j. There is no evidence that Walls ever bent over even in
 the slightest after having been hit by a very large man. He
 was not winded by having been punched. There was no
 evidence at all from any of the corrections officers of any
 physical reaction to having been punched.

 k. The facts that Walls made no complaint, that he made
 the statement to Grantham, that there was no physical
 reaction to having been punched, that there was no sign of
 assault in the physical exam and moments later he is
 walking as though nothing has happened are indicative
 that only one of two possible scenarios existed on that date
 and at that time: either (1) Petitioner did not hit inmate
 Walls at all, or (2) Petitioner did hit Walls but with such
 insignificant force that it was practically non-existent.

 l. Having concluded that the three corrections officers’
 testimony was sufficiently credible and concluded that
 indeed Petitioner did strike inmate Walls, then the only
 rational conclusion based on the totality of the
 circumstances in this contested case is that Petitioner
 struck Walls with very little force.

 These findings, which are challenged by Respondent, are listed in the ALJ’s

final decision under the heading “Conclusions of Law.” However, they are more

appropriately reviewed as findings of fact. See Barnette v. Lowe’s Home Ctrs., Inc., __

N.C. App. __, __, 785 S.E.2d 161, 165 (2016) (“[A]ny determination requiring the

exercise of judgment or the application of legal principles is more properly classified

a conclusion of law,” while a “determination reached through logical reasoning from

the evidentiary facts is more properly classified a finding of fact.” (citation omitted)).

 - 20 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

We consider and review them as findings of fact, without regard to the given label.

See N.C. State Bar v. Key, 189 N.C. App. 80, 88, 658 S.E.2d 493, 499 (2008)

(“[C]lassification of an item within [an] order is not determinative, and, when

necessary, the appellate court can reclassify an item before applying the appropriate

standard of review.”).

 As the sole fact-finder, the ALJ has both the duty and prerogative to determine

the credibility of the witnesses, the weight and sufficiency of their testimony, “to draw

inferences from the facts, and to sift and appraise conflicting and circumstantial

evidence.” Ledford, __ N.C. App. at __, 786 S.E.2d at 64 (citation omitted). We afford

“a high degree of deference” to the ALJ’s findings, when they are supported by

substantial evidence in the record. Id. After reviewing the whole record, we find

substantial evidence support the ALJ’s findings, and they are binding on appeal. See

Carroll, 358 N.C. at 660, 599 S.E.2d at 895.

 Just cause is determined upon “examination of all the facts, circumstances,

and equities of a case, [and] consideration of additional factors shedding light on the

employee’s conduct[.]” Bulloch v. N.C. Dept. of Crime Control and Pub. Safety, 223

N.C. App. 1, 12, 732 S.E.2d 373, 381, disc. review denied, 366 N.C. 418, 735 S.E.2d

178 (2012). The Court in Warren referred to this process as “balanc[ing] the equities.”

Warren, 221 N.C. App. at 382, 726 S.E.2d at 925. This Court recently explained, “A

just and equitable determination of whether the unacceptable personal conduct

 - 21 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

constituted just cause for the disciplinary action taken requires consideration of the

facts and circumstances of each case, including mitigating factors.” N.C. Dep’t of Pub.

Safety v. Shields, __ N.C. App. __, __, 781 S.E.2d 718, __ (Jan. 19, 2016) (unpublished),

disc. review denied, __ N.C. __, 784 S.E.2d 176 (2016).

 Based upon the evidence received and the findings set forth above, the ALJ

determined Petitioner’s conduct “does not rise to the level of conduct that would

justify the severest sanction of dismissal under the totality of facts and circumstances

of this contested case; it is not the ‘right’ thing to do.” While we do not condone

Respondent’s behavior, we recognize the ALJ is the sole fact-finder, and the only

tribunal with the ability to hear testimony, observe witnesses, and weigh credibility.

As such, we defer to the ALJ’s findings of fact, even if evidence was presented to

support contrary findings. Ledford, __ N.C. App. at __, 786 S.E.2d at 64.

 In consideration of the findings of fact set forth above, and after “balancing the

equities,” we hold the ALJ did not err in determining the agency did not meet its

burden to show just cause for Respondent’s termination. Warren, 221 N.C. App. at

383, 726 S.E.2d at 925.

 C. Imposition of Alternative Discipline by the ALJ

 The North Carolina Administrative Code sets forth four disciplinary

alternatives, which may be imposed against an employee upon a finding of just cause:

“(1) written warning; (2) Disciplinary suspension without pay; (3) Demotion; and (4)

 - 22 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

Dismissal.” 25 NCAC 1J.0604(a). “Unacceptable personal conduct does not

necessarily establish just cause for all types of discipline. . . . Just cause must be

determined based upon an examination of the facts and circumstances of each

individual case.” Warren, 221 N.C. App. at 383, 726 S.E.2d at 925. Under the

necessarily malleable judgment standard created by our precedents, and after

considering the totality of the unique facts and circumstances of the present case, we

affirm the ALJ’s determination that just cause did not exist to impose the most severe

form of discipline: dismissal from employment. See Carroll, 358 N.C. at 669, 599

S.E.2d at 900.

 In a contested case, “the burden of showing a career State employee was

discharged, demoted, or suspended for just cause rests with the employer.” N.C. Gen.

Stat. § 126-34.02(d). There are likely scenarios in which the employer meets its

burden to show just cause exists to impose a disciplinary action, but just cause does

not exist to support dismissal of the employee. The General Assembly recognized this

range of possible sanctions and enacted N.C. Gen. Stat. § 126-34.02 as part of the

2013 amendments. The statute reads:

 (a) Once a final agency decision has been issued in
 accordance with G.S. 126-34.01, an applicant for
 State employment, a State employee, or former State
 employee may file a contested case in the Office of
 Administrative Hearings under Article 3 of Chapter
 150B of the General Statutes. The contested case
 must be filed within 30 days of receipt of the final
 agency decision. Except for cases of extraordinary

 - 23 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

 cause shown, the Office of Administrative Hearings
 shall hear and issue a final decision in accordance
 with G.S. 150B-34 within 180 days from the
 commencement of the case. In deciding cases under
 this section, the Office of Administrative Hearings
 may grant the following relief:

 (1) Reinstate any employee to the position from
 which the employee has been removed.

 (2) Order the employment, promotion, transfer, or
 salary adjustment of any individual to whom it
 has been wrongfully denied.

 (3) Direct other suitable action to correct the abuse
 which may include the requirement of payment
 for any loss of salary which has resulted from
 the improper action of the appointing
 authority.

N.C. Gen. Stat. § 126-34.02(a) (2015) (emphases supplied).

 Under subsection (a)(3) of the statute, the ALJ has express statutory authority

to “[d]irect other suitable action” upon a finding that just cause does not exist for the

particular action taken by the agency. Under the ALJ’s de novo review, the authority

to “[d]irect other suitable action” includes the authority to impose a less severe

sanction as “relief.” See id.

 Because the ALJ hears the evidence, determines the weight and credibility of

the evidence, makes findings of fact, and “balanc[es] the equities,” the ALJ has the

authority under de novo review to impose an alternative discipline. Upon the ALJ’s

determination that the agency met the first two prongs of the Warren standard, but

 - 24 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

just cause does not exist for the particular disciplinary alternative imposed by the

agency, the ALJ may impose an alternative sanction within the range of allowed

dispositions. See id. We hold the ALJ acted within his authority by determining the

agency failed to meet its burden to show just cause existed to warrant Petitioner’s

termination for unacceptable personal conduct.

 Our separately writing colleague states N.C. Gen. Stat. § 126-34.02(a)(3) is

inapplicable, because “the ALJ could only invoke his or her powers pursuant to [this

subsection] if it first determined there was no just cause for the termination of

Petitioner’s employment.” The ALJ clearly determined just cause does not exist for

Petitioner’s termination. The separate opinion would impose the harshest

alternative allowed as a sanction for unacceptable personal conduct. No process or

standard is proposed to guide the substitution of the sanction for that imposed by the

finder of fact.

 The final decision states the ALJ “finds that there was not just cause to dismiss

Petitioner for unacceptable personal conduct.” (emphasis supplied). The ALJ heard

the evidence, weighed the credibility, and determined dismissal of Petitioner was

unwarranted under these facts, and imposed a written warning and a one-week

suspension without pay. Under our de novo review, we agree the evidence and

findings of fact tends to show just cause exists to impose discipline upon petitioner as

 - 25 -
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 Opinion of the Court

a result of his unacceptable personal conduct. The ALJ imposed a sanction within

the range of authorized disciplinary alternatives. See 25 N.C.A.C. 1J .0604(a).

 V. Conclusion

 Under our de novo review of the existence of just cause, and giving whole record

deference to the ALJ’s findings of fact, the ALJ’s conclusion that Petitioner’s conduct

“does not rise to the level of conduct that would justify the severest sanction of

dismissal under the totality of facts and circumstances of this contested case,” and

dismissal of Petitioner “is not the ‘right’ thing to do” is affirmed. The ALJ’s conclusion

that just cause existed for a written warning and a one-week suspension without pay

is also affirmed. The final decision of the ALJ is affirmed.

 AFFIRMED.

 Judge DIETZ concurs.

 Chief Judge McGEE concurs in part, dissents in part, with separate opinion.

 - 26 -
 No. COA16-341 – Harris v. N.C. Dep’t of Pub. Safety

 McGEE, Chief Judge, concurring in part and dissenting in part.

 I concur in the majority’s conclusion that an “administrative law judge,

reviewing an agency’s decision to discipline a career state employee . . . owes no

deference to the agency’s conclusion of law that . . . just cause existed” for the action

taken by the agency. I also agree that “[a]fter receiving and considering the evidence,

and entering findings of fact, an administrative law judge is free to substitute their

judgment for that of the agency as to the legal conclusion of whether just cause . . .

existed for the agency’s action.” However, I respectfully dissent from the majority’s

assertion that the standards of review provided in N.C. Gen. Stat. § 150B-51 apply to

this case. I further dissent from the majority’s conclusion, in its application of the

three-prong “just cause” analysis created by this Court in Warren v. N.C. Dep’t of

Crime Control, 221 N.C. App 376, 726 S.E.2d 920, disc. review denied, 366 N.C. 408,

735 S.E.2d 175 (2012), that Petitioner’s actions in the present case did not give rise

to just cause for his termination – the disciplinary action chosen by the agency.

 I. Changes in the Just Cause Statutory Framework

 The present case is the first time this Court has interpreted the changes made

to the statutory scheme for determining when just cause exists for an agency’s

disciplinary decision. See generally 2013 N.C. Sess. Laws ch. 382 (“the 2013

amendment”). The most significant change made by the 2013 amendment was to

alter the role of the ALJ in the just cause determination process. Under the former

statutory framework, an ALJ provided a “recommended decision,” complete with
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 McGEE, C.J., concurring in part and dissenting in part

findings of facts and conclusions of law, before entry of a final agency action. See N.C.

Dep’t of Env’t & Natural Res. v. Carroll, 358 N.C. 649, 657-58, 599 S.E.2d 888, 893-

94 (2004). Through the 2013 amendment, the General Assembly created N.C. Gen.

Stat. §§ 126-34.01 and 126-34.02, and in doing so significantly shifted the role of the

ALJ in the just cause determination process. A contested case hearing is now

initiated in the Office of Administrative Hearings “[o]nce a final agency decision has

been issued[.]” N.C. Gen. Stat. § 126-34.02(a) (2015). N.C. Gen. Stat. § 126-34.02

currently allows the ALJ to review an agency decision to terminate the employment

of a career State employee under the following relevant circumstances:

 (b) The following issues may be heard as contested
 cases after completion of the agency grievance procedure
 and the Office of State Human Resources review:

 ....

 (3) Just cause for dismissal, demotion, or
 suspension. – A career State employee may
 allege that he or she was dismissed, demoted,
 or suspended for disciplinary reasons without
 just cause.

N.C. Gen. Stat. § 126-34.02(b)(3) (2015). The language of N.C. Gen. Stat. § 126-

34.02(b)(3) allows a State employee to initiate a contested case in the Office of

Administrative Hearings to review whether just cause existed to dismiss, demote, or

suspend that employee. Id. There is nothing in the language of N.C.G.S. § 126-

34.02(b)(3) to indicate that a career state employee may initiate a contested case to

 2
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 McGEE, C.J., concurring in part and dissenting in part

argue that he should have received a lesser disciplinary action, although just cause

existed for the disciplinary action received.

 Further, N.C. Gen. Stat. § 126-34.02(a) limits the Office of Administrative

Hearings to the following relief when it has determined that the final agency decision

was erroneous:

 Once a final agency decision has been issued in accordance
 with G.S. 126-34.01, . . . a State employee, or former State
 employee may file a contested case in the Office of
 Administrative Hearings under Article 3 of Chapter 150B
 of the General Statutes. . . . In deciding cases under this
 section, the Office of Administrative Hearings may grant
 the following relief:

 (1) Reinstate any employee to the position from
 which the employee has been removed.

 (2) Order the employment, promotion, transfer,
 or salary adjustment of any individual to
 whom it has been wrongfully denied.

 (3) Direct other suitable action to correct the
 abuse which may include the requirement of
 payment for any loss of salary which has
 resulted from the improper action of the
 appointing authority.

N.C. Gen. Stat. § 126-34.02 (2015). N.C. Gen. Stat. § 126-34.02(a)(2) is not relevant

to the issue before us. N.C. Gen. Stat. § 126-34.02(a)(1) authorizes reinstatement of

an employee if the ALJ in a contested case hearing determines that there was no just

cause to terminate the employee. N.C.G.S. § 126-34.02(a)(1) does not specifically

authorize the ALJ to grant any relief other than reinstatement if it determines that

 3
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 McGEE, C.J., concurring in part and dissenting in part

dismissal was not supported by just cause. N.C. Gen. Stat. § 126-34.02(a)(3) allows

the ALJ to take other suitable action that may include actions not specifically

mentioned in the statute, but only “to correct the abuse [or the ‘improper action of the

appointing authority’].” Id. In other words, N.C.G.S. § 126-34.02(a)(3) only applies

if the ALJ had determined that the final agency decision was erroneous. In the case

before us, the ALJ could only invoke his or her powers pursuant to N.C.G.S. § 126-

34.02(a)(3) if it first determined there was no just cause for the termination of

Petitioner’s employment.1

 In short, the Office of Administrative Hearings is authorized by N.C.G.S. § 126-

34.02 to take action in a contested case if it has first determined that the actual

discipline included in the final agency decision was not supported by just cause. If

the ALJ determines that there was just cause to support the final agency decision, it

lacks authority to do anything other than affirm that decision.

 While the majority principally cites and quotes from N.C.G.S. § 126-34.02, the

majority simultaneously concludes that N.C. Gen. Stat. § 150B-51 “governs the scope

and standard of review of this Court’s review of an administrative agency’s final

decision,” and that “[t]he standard of review is dictated by the substantive nature of

 1 I would further note that nothing in N.C.G.S. § 126-34.02(a)(3) suggests that an ALJ is
granted authority to substitute his or her judgment for that of the relevant agency as to the correct
disciplinary action to be imposed. N.C.G.S. § 126-34.02(a)(3) only gives the ALJ the authority to
remedy any damages to a petitioner flowing from an incorrect discipline imposed by a final agency
decision.

 4
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 McGEE, C.J., concurring in part and dissenting in part

each assignment of error.” (citations omitted). I disagree with any reliance the

majority places on N.C.G.S. § 150B-51, a separate statutory framework which is, in

my view, inapplicable to the present case. N.C.G.S. § 150B-51, a part of Article 4 of

Chapter 150B of the General Statutes, is entitled “Judicial Review” and allows “[t]he

court reviewing a final decision” of an ALJ to reverse or modify that decision under

certain circumstances and under various standards of review. See N.C. Gen. Stat. §§

150B-51(b)(1)-(6) (2015). N.C. Gen. Stat. § 150B-43, another statute in Article 4,

describes when the procedure provided by Article 4 of Chapter 150B governs judicial

review of an ALJ’s decision, and when it does not:

 Any party or person aggrieved by the final decision in a
 contested case, and who has exhausted all administrative
 remedies made available to the party or person aggrieved
 by statute or agency rule, is entitled to judicial review of
 the decision under this Article, unless adequate procedure
 for judicial review is provided by another statute, in which
 case the review shall be under such other statute.

N.C. Gen. Stat. § 150B-43 (2015) (emphasis added).

 The procedure in Article 4 of Chapter 150B, including the standards of review

in N.C.G.S. § 150B-51, are inapplicable because N.C.G.S. § 126-34.02, which states

that “[a]n aggrieved party in a contested case under this section shall be entitled to

judicial review of a final decision by appeal to the Court of Appeals,” serves as

“another statute” which provides an “adequate procedure for judicial review” and

thereby renders N.C.G.S. §§ 150B-43 through 150B-52 not relevant. This view is

reinforced by reading N.C.G.S. § 126-34.02, which provides judicial review directly to

 5
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 McGEE, C.J., concurring in part and dissenting in part

the Court of Appeals, in pari materia with N.C.G.S. § 150B-45, which provides that,

under the procedures set out in Article 4 of Chapter 150B, judicial review is

undertaken first in superior court. See N.C. Gen. Stat. § 150B-45 (2015) (“To obtain

judicial review of a final decision under [Article 4 of Chapter 150B], the person

seeking review must file . . . [a] petition for review . . . in the superior court[.]”). Both

statutes cannot control judicial review of contested case hearings of this nature, and

because N.C.G.S. § 126-34.02 was specifically enacted to provide for judicial review

directly to this Court, I find it to be the “adequate procedure for judicial review”

contemplated by N.C.G.S. § 150B-43. Therefore, the statutory procedure set forth in

Article 4 of Chapter 150B, including the standards of review in N.C.G.S. § 150B-51,

are inapplicable.2 I dissent from the majority’s conclusion, to the extent that it holds

that the standards of review contained in N.C.G.S. § 150B-51 are applicable to this

case.

 II. Warren Analysis: Just Cause for Petitioner’s Termination

 N.C. Gen. Stat. § 126-35(a) provides: “No career State employee subject to the

North Carolina Human Resources Act shall be discharged, suspended, or demoted for

disciplinary reasons, except for just cause. . . . The State Human Resources

 2While the standards of review provided in N.C.G.S. § 150B-51 are inapplicable, the standards
of review that are applicable to judicial review of contested cases of this nature are well established,
and are cited by the majority. Findings of fact are reviewed under the whole record test, and
conclusions of law are reviewed de novo. See N.C. Dep’t of Env’t & Natural Res. v. Carroll, 358 N.C.
649, 655, 599 S.E.2d 888, 898 (2004); Barron v. Eastpointe Human Servs. LME, ___ N.C. App. ___, ___,
786 S.E.2d 306, 310-11 (2016).

 6
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 McGEE, C.J., concurring in part and dissenting in part

Commission may adopt, subject to the approval of the Governor, rules that define just

cause.” N.C. Gen. Stat. § 126-35(a) (2015). Exercising that delegated authority, the

State Human Resources Commission has adopted rules, codified in the North

Carolina Administrative Code, that define just cause for disciplinary action: “Either

unsatisfactory or grossly inefficient job performance or unacceptable personal

conduct as defined in 25 NCAC 1J .0614 of this Section constitute just cause for

discipline or dismissal.” 25 NCAC 01J .0604(c). Unacceptable personal conduct, the

reason for dismissal in this case, includes “the willful violation of known or written

work rules.” 25 NCAC 01J .0614(8)(d).

 In Warren, as noted by the majority, this Court delineated a three-part inquiry

to guide courts in determining whether an employee was dismissed for “just cause”

for unacceptable personal conduct:

 [T]he best way to accommodate the Supreme Court’s
 flexibility and fairness requirements for just cause is to
 balance the equities after the unacceptable personal
 conduct analysis. This avoids contorting the language of
 the Administrative Code defining unacceptable personal
 conduct. The proper analytical approach is to first
 determine whether the employee engaged in the conduct
 the employer alleges. The second inquiry is whether the
 employee’s conduct falls within one of the categories of
 unacceptable personal conduct provided by the
 Administrative Code. Unacceptable personal conduct does
 not necessarily establish just cause for all types of
 discipline. If the employee’s act qualifies as a type of
 unacceptable conduct, the tribunal proceeds to the third
 inquiry: whether that misconduct amounted to just cause
 for the disciplinary action taken.

 7
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 McGEE, C.J., concurring in part and dissenting in part

Warren, 221 N.C. App. at 382-83, 726 S.E.2d at 925 (citations and footnote omitted).

Applying Warren’s framework in the present case, I, too, find the first two inquiries

satisfied.3 As to the first inquiry, the unchallenged findings of fact provide that

Petitioner punched Walls in the stomach with his fist, without provocation, and at a

time when Walls was restrained and under the complete control of multiple

correctional officers. As to the second inquiry, Petitioner’s conduct amounted to the

“willful violation of known or written work rules,” which is one of the instances of

unacceptable personal conduct pursuant to 25 NCAC 01J .0614(8)(d).

 However, I must disagree with the majority as to “the third inquiry: whether

[the petitioner’s] misconduct amounted to just cause for the disciplinary action

taken.” Warren, 221 N.C. App. at 382-83, 726 S.E.2d at 925. After considering the

totality of the facts and circumstances of the present case, I believe Petitioner’s

actions of unacceptable personal conduct gave rise to “just cause” for his termination

by Respondent. The unchallenged findings show that Petitioner punched an inmate

in the stomach with his fist, without justification, and while the inmate was

restrained, compliant, and under the complete control of other correctional officers.

The three correctional officers present at the scene, and tasked with removing Walls

from his cell, testified as to Petitioner’s actions, and their effect on Walls.

 3 Although our Supreme Court is not bound by Warren’s three-prong analysis, see, e.g.,
Northern Nat’l Life Ins. v. Miller Machine Co., 311 N.C. 62, 76, 316 S.E.22d 256, 265 (1984), Warren’s
analysis is a helpful conceptualization of N.C. Dep’t of Env’t & Natural Res. v. Carroll, 358 N.C. 649,
599 S.E.2d 888 (2004), and is useful in the just cause analysis.

 8
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 McGEE, C.J., concurring in part and dissenting in part

 Officer Johnson testified that Petitioner entered through a side door, said to

Walls, “you think this is funny,” and punched Walls in the stomach. Officer Johnson

explained that the “blow was unexpected,” and it caused Walls to “ma[ke] a sound”

and fall to the ground. Officer Alexander likewise described Walls’ reaction to

Petitioner’s punch: “[Walls] grunted, leaned forward, shook his head, and stood back

up.” Petitioner found this funny, and “laugh[ed] all the way” from the scene of the

assault to Walls’ holding cell. Officer Johnson “couldn’t believe [Petitioner] did what

he did,” and was so astonished that he needed “to clear [his] head.” Petitioner later

sought out Officer Johnson and, while refusing to answer “why [he] hit that inmate

for no reason,” explained that the fact the assault occurred in a known blind spot was

not coincidental; Petitioner explained that he waited to strike until Walls was in a

known blind spot: Petitioner explained to Officer Johnson that “[h]e knew where all

the blind spots was [sic], and the camera didn’t pick up nothing. Didn’t see it.”

Petitioner also threatened Officer Johnson, telling Sergeant Grantham that “if

[Officer] Johnson wrote anything against him, that he [Petitioner] was going to hurt

Johnson.”

 Petitioner was aware of Respondent’s Use of Force policy, which limited use of

force to a “last resort” and prohibited force as a form of punishment. The reason for

Petitioner’s attack on Walls was not inmate safety, institutional security, or some

other legitimate penological purpose; rather, Petitioner punched Walls as “some form

 9
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 McGEE, C.J., concurring in part and dissenting in part

of retribution” for spreading feces in his cell. The majority places great weight on

various “mitigating factors” found by the ALJ including, inter alia: (1) Petitioner’s

good prior work history, including a “good working relationship with Walls;” (2) that

Petitioner was not working his regular shift; (3) the absence of bruising on Walls

thirty minutes after the assault; and (4) the fact that Walls was “walking erect,

smiling, and in no apparent distress” after the incident.

 Given the testimony of three correctional officers, who unanimously testified

to Petitioner’s use of unwarranted physical force on an inmate, Petitioner’s prior work

history or prior “good working relationship” with Walls has little relevance to the

question of whether Respondent had just cause to terminate Petitioner. Regardless

of his past work history, I find Petitioner’s present acts troubling; Petitioner laid in

wait until Walls was in a known blind spot, approached and punched him in the

stomach as “some form of retribution” for spreading feces in his cell, found Walls’

physical response to being punched funny, and subsequently threatened violence

against another officer if that officer reported the incident. And while it appears to

me that Petitioner’s punch was of much greater force than the majority and the ALJ

believe – Officer Johnson testified that the force of the punch brought Walls to the

ground, and Officer Alexander characterized Walls as keeling over and shaking his

head – the force of Petitioner’s punch has little relevance to the just cause

determination in the present case.

 10
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 McGEE, C.J., concurring in part and dissenting in part

 Notwithstanding Petitioner’s positive performance reviews and his lack of

problems preceding this incident, I would hold that a single incident of intentionally

and maliciously punching a restrained and compliant inmate for no legitimate

penological purpose in violation of Respondent’s Use of Force policy amounts to

unacceptable personal conduct that provides just cause for termination, regardless of

the amount of force used.

 Nearly all of North Carolina’s correctional officers endeavor on a daily basis to

ensure the public’s safety and undertake their duties in a professional manner, and

society calls on our correctional officers to make judgments to assure the safety and

security of the public and inmates alike. See Blackburn v. N.C. Dep’t of Pub. Safety,

___ N.C. App. ___, ___, 784 S.E.2d 509, 528 (2016) (noting that the “most important

‘job requirement’” of a correctional officer is “that of exercising good judgment in a

supervisory position of great responsibility”). Under the majority’s rationale, so long

as a correctional officer has maintained a positive work history and injures an inmate

in a way that does not leave physical markings, Respondent does not have just cause

to remove that officer from his or her position, a position of great trust and confidence.

Id.

 III. Conclusion

 I agree with the majority that an administrative law judge “owes no deference

to the agency’s conclusion of law that . . . just cause existed” for the action taken by

 11
 HARRIS V. N.C. DEP’T OF PUB. SAFETY

 McGEE, C.J., concurring in part and dissenting in part

the agency, and that “[a]fter receiving and considering the evidence, and entering

findings of fact, an administrative law judge is free to substitute their judgment for

that of the agency as to the legal conclusion of whether just cause . . . existed for the

agency’s action.” However, I respectfully dissent from the majority’s reliance on the

standards of review in N.C.G.S. § 150B-51. Because judicial review is established for

cases of this type in “another statute” – namely, N.C.G.S. § 126-34.02 – I believe

N.C.G.S. § 150B-51 is not applicable to this case. I further dissent from the majority’s

application of Warren’s third prong, and would conclude that Petitioner’s actions

provided Respondent with just cause to terminate Petitioner for unacceptable

personal conduct. Therefore, I would reverse the decision of the ALJ.

 12